907 P.2d 172

**Candace LEYBA, conservator of the Estate of Phillip Leroy Urioste, a minor, Plaintiff–Petitioner,**

v.

**Joseph E. WHITLEY and Daniel W. Shapiro, Defendants– Respondents.**

No. 22309.

Supreme Court of New Mexico.

Oct. 11, 1995.

Catron, Catron & Sawtell, P.A., John S. Catron and W. Anthony Sawtell, Santa Fe, for Petitioner.

Threet & King, Martin E. Threet, Albuquerque, for Respondent Joseph E. Whitley.

McClaugherty, Silver & Downes, P.C., Joe L. McClaugherty and Cameron Peters, Santa Fe, for Respondent Daniel W. Shapiro.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward R. Ricco and James P. Bieg, Albuquerque, for Amicus Curiae N.M. Defense Lawyers Ass'n.

Michael B. Browde, Albuquerque, for Amicus Curiae N.M. Trial Lawyers Ass'n.

## OPINION

RANSOM, Justice.

1. Candace Leyba is the conservator for her minor son, Phillip LeRoy Urioste. In that capacity she sued attorneys Joseph E. Whitley and Daniel W. Shapiro for legal malpractice in their handling of a claim for the wrongful death of Phillip LeRoy's father, Phillip Urioste. As sole statutory beneficiary, Phillip LeRoy has been deprived of nearly $325,000 in net wrongful death proceeds obtained by Whitley and Shapiro. They paid the proceeds to the deceased's mother, Cor-

rine Urioste, whom they represented as the personal representative in settling the wrongful death claim. Corrine dissipated the settlement proceeds and Leyba argues that Whitley and Shapiro breached a duty owed by them to her son to ensure that he receive his money.

2. The trial court entered summary judgment in favor of Whitley and Shapiro. On appeal the Court of Appeals held that the attorneys did not owe a duty directly to Phillip LeRoy to ensure that he receive the settlement proceeds. *Leyba v. Whitley*, 118 N.M. 435, 438–40, 882 P.2d 26, 29–31 (Ct. App.1994). The Court also held, however, that Whitley and Shapiro did owe a duty to their client Corrine to inform her that the money did not belong to her and that she had a fiduciary duty to distribute it to the child. *Id.* at 445, 882 P.2d at 36. The attorneys would be liable to the child if they breached this duty to their client. Finding a genuine issue of fact on the question whether Whitley and Shapiro had breached this duty, the Court reversed the entry of summary judgment. *Id.* at 445–46, 882 P.2d at 36–37. We granted certiorari, 118 N.M. 430, 882 P.2d 21 (1994), to review whether the attorneys owed the child a duty of reasonable care to protect his right to receive the net settlement proceeds. We conclude that an attorney handling a wrongful death case owes to the statutory beneficiaries of that action a duty of reasonable care to protect their interest in receiving any proceeds obtained. We therefore reverse and remand.

3. *Facts and proceedings.* Corrine hired attorney Whitley to pursue an action against several medical care providers for the death of her son Phillip who died in February 1990. Whitley had Corrine appointed personal representative of her son's estate and he associated with attorney Shapiro to pursue the wrongful death claims. Together, Whitley and Shapiro filed an application with the medical review commission. *See* NMSA 1978, § 41–5–14(D) (Repl.Pamp.1989) (requiring application to medical review commission for review of malpractice claims prior to filing claims in district court). Although no lawsuit was ever filed, Whitley and Shapiro successfully secured a settlement of Cor-

rine's claims in March 1991 for the sum of $548,931.59.

4. Phillip LeRoy was not born until nearly seven months after Phillip died. Phillip previously had fathered two other children, but the parties do not ask that we consider whether the right these two children may otherwise have had to wrongful death benefits survived their adoption by others prior to Phillip's death. By the time Whitley and Shapiro secured a settlement of Corrine's claims, they had determined that Leyba's then six-month-old child was the sole statutory beneficiary of Phillip Urioste. *See* NMSA 1978, § 41–2–3 (Repl.Pamp.1989) (stating that when the deceased is unmarried, his or her child is entitled to proceeds of any wrongful death action).

5. The settling medical care providers issued checks for the agreed-upon sum made payable to Corrine as personal representative of Phillip Urioste's estate. Some of these checks also included Whitley and Shapiro as payees. Each of the payees endorsed the checks and all of the proceeds were then deposited into Shapiro's trust account. After deducting nearly $225,000 to cover costs and attorneys' fees, Whitley and Shapiro distributed the net settlement proceeds directly to Corrine by three separate checks made payable simply to "Corrine Urioste." Nothing on the checks indicated that the funds were paid to Corrine in a fiduciary capacity.

6. The attorneys testified in deposition that they disbursed the net settlement proceeds to Corrine based upon her representation that she intended to invest the proceeds on behalf of the child and manage those investments with the assistance of an investment advisor until the child reached age eighteen. Corrine never told Whitley or Shapiro where or with whom she intended to invest the money, and neither of them inquired. After receiving the checks, Corrine spent more than $300,000 on herself and on others. Among her purchases were numerous automobiles and three mobile homes, including a $40,000 mobile home for her own use. Of the total settlement Corrine reserved only $20,000 for Phillip LeRoy in a trust account at a Santa Fe brokerage firm.

7. In the trial court the parties presented conflicting evidence on the question whether Whitley and Shapiro had advised Corrine of her fiduciary obligations. Leyba presented deposition testimony in which Corrine stated that Whitley had told her the money was hers. Corrine also testified that she believed it was hers. Finally, Leyba presented evidence that Whitley had prepared the contract for Corrine to purchase the $40,000 mobile home and that he had included a clause making Corrine's performance of this contract contingent upon a wrongful death recovery. By contrast, the attorneys presented sworn statements that they had advised Corrine the money was not hers and sworn statements that other persons had advised Corrine of her fiduciary status. It is undisputed that the attorneys did not provide Corrine with written advice or instructions regarding her obligations in connection with the settlement proceeds.

█ 8. *Professional responsibilities in contract and tort.* Whether Whitley and Shapiro owed a duty to Phillip LeRoy is a question of law, *Schear v. Board of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984), and is based upon policy considerations, *Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990). By reference to existing statutes, rules of court, judicial precedent, and other principles comprising the law, we must determine whether the public policy of New Mexico supports a duty that runs directly from these attorneys to the child—a duty that requires them to exercise reasonable care to protect the child's interest in the settlement proceeds of the wrongful death action of which he was the sole statutory beneficiary.

9. Whitley and Shapiro, supported by amicus curiae New Mexico Defense Lawyers Association, argue that public policy prohibits imposing a duty of care running directly from attorneys to the statutory beneficiaries of a wrongful death claim. They argue that imposing such a duty will create conflicting loyalties and hence unduly burden the lawyer-client relationship. Specifically, they argue that imposing a duty to the nonclient beneficiaries will force attorneys to breach client confidences, will leave attorneys without anyone whose decisions regarding the litigation will be binding, and will place attorneys in the impossible, and perhaps unethical, position of trying to represent persons with competing claims.

10. Leyba and supporting amicus curiae New Mexico Trial Lawyers Association counter that perceived conflicting loyalties are more illusory than real. They contend that even though a lawyer is retained by the personal representative, the latter is a nominal party only and the lawyer's true obligation is to protect the statutory beneficiaries. Leyba argues in the alternative that even if imposing a duty on the lawyer running directly to the statutory beneficiaries may create conflicting loyalties, the Court of Appeals erroneously gave dispositive effect to the burden that such conflicts would impose on the lawyer-client relationship. As part of her argument, Leyba urges this Court to adopt a multi-factor balancing test under which the burden imposed on the lawyer-client relationship is only one among several factors to be considered in determining whether a duty exists.

█ 11. *—Privity principles affecting whether attorney owes professional duty to nonclient.* Although courts stop short of declaring an intended third-party beneficiary to be in privity of contract, such a party is accorded traditional contract remedies with respect to the bargain intended for his or her benefit. *See, e.g., Johnson v. Armstrong & Armstrong*, 41 N.M. 206, 210, 66 P.2d 992, 994–95 (1937) (unnamed third-party beneficiary may enforce contract). Thus, when a third party can show that both the attorney and the client intended by their agreement to benefit the third party, then he or she has a remedy in contract against the attorney. For purposes of our analysis here, we will assume that the third party's remedy in contract is based upon a duty running from the attorney to the client rather than from the attorney to the third party. As with any service contract, an implied term of an attorney's contract to provide professional services for the benefit of a third party is the promise to render services with reasonable skill and care. *Cf. Flores v. Baca*, 117 N.M. 306, 310, 871 P.2d 962, 966 (1994).

■ **12.** For reasons of public policy, the common law of torts also recognizes an attorney's duty to provide professional services with the skill, prudence, and diligence of attorneys of ordinary skill and capacity. *See, e.g., Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor,* 115 N.M. 159, 162–63, 848 P.2d 1086, 1089–90 (Ct.App.), *cert. denied,* 115 N.M. 60, 846 P.2d 1069 (1993). When a duty exists, and when the attorney's conduct falls below this standard of care, liability for legal malpractice will attach. While no reported case has been brought to our attention in which New Mexico courts have rejected a contract claim for professional services negligently performed, the gravamen of a malpractice action arising out of the lawyer-client relationship is generally recognized to lie in tort.

> Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.

*Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 54 (1990) (quoting *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112, 120 (1984)); *see also Adobe Masters, Inc. v. Downey,* 118 N.M. 547, 548–49, 883 P.2d 133, 134–35 (1994) (distinguishing breach of specific term of professional service contract from malpractice and implied warranty to use reasonable skill, and holding dismissal of contract action for breach of implied warranty was harmless error when jury was instructed on malpractice).

■ **13.** Nevertheless, the foundation of any malpractice claim by an intended beneficiary remains the express or implied contract that gives rise to the lawyer-client relationship. 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 8.2, at 403 (3d ed. 1989) ("Almost invariably, any theory of legal malpractice must rest upon an attorney-client relationship."). A California court explained this principle in a will-drafting context as follows:

> Although the duty accrues directly in favor of the intended testamentary beneficiary, the scope of the duty is determined by reference to the attorney-client context. Out of the agreement to provide legal services to a client, the prospective testator, arises the duty to act with due care as to the interests of the intended beneficiary.

*Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 229, 449 P.2d 161, 165 (1969) (in bank). Further, we have observed previously that "no cause of action in tort arises from a breach of duty existing by virtue of [a] contract unless there exists between the defendant and the injured person what is termed 'privity of contract.' " *Baca v. Britt,* 73 N.M. 1, 7, 385 P.2d 61, 65 (1963).[1]

■ **14.** While declining to hold that an intended third-party beneficiary stands in privity, some courts do recognize a tort duty owed by an attorney to a nonclient as an *exception* to the privity requirement. The

---

**1.** Historically, an attorney could not be held liable to a third party for professional negligence absent fraud, collusion, or privity of contract. *See, e.g., National Sav. Bank v. Ward,* 100 U.S. 195, 205–06, 25 L.Ed. 621 (1880) (holding that, because there was no fraud, collusion, or privity of contract, attorney was not liable to nonclient lenders who, in reliance on attorney's title opinion, had suffered financial loss). While sitting as a judge of New York's highest court, future Justice Cardozo explained the role of this privity doctrine in the context of professional services. In *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 444–45 (1931), an action for damages by a company that had relied to its detriment on a certified balance sheet prepared by accountants, Cardozo explained that privity was intended to prevent unlimited liability to an indeterminate class of individuals.

Modern decisions have relaxed or abandoned the privity requirement and increasingly have recognized that under certain circumstances involving *justifiable third-party reliance* on representations made by the attorney, the attorney will owe a duty of care to a person who is not his or her client. *See, e.g., Petrillo v. Bachenberg,* 139 N.J. 472, 655 A.2d 1354, 1361 (1995) (holding that attorney who had prepared a composite report containing information about real property for seller of that property owed duty of due care to prospective purchaser); *McEvoy v. Helikson,* 277 Or. 781, 562 P.2d 540, 543 (1977) (holding that attorney for ex-wife who had undertaken to hold her passport until she returned minor child to former husband owed duty to former husband).

Supreme Court of Kansas, for example, has stated that:

> The strict requirement of privity of contract, however, has been eased when an attorney renders services that the attorney should have recognized as involving a foreseeable injury to a third-party beneficiary of the contract.

*Pizel,* 795 P.2d at 48.[2] *See also Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618, 622–26 (1985) (discussing the bases of attorney liability to third-party nonclients and adopting third-party beneficiary theory as limited exception to strict privity requirement). Similarly, in *Baer v. Broder,* 86 A.D.2d 881, 447 N.Y.S.2d 538, 539 (1982), a New York court held that the relationship of the statutory beneficiary to an underlying wrongful death action is unique and demands an exception to the general rule regarding privity. In that case the attorney had represented Baer in her capacity as executrix, but Baer sued the attorney in her individual capacity as the sole beneficiary of a wrongful death claim that she alleged to have been negligently settled. The court held that although Baer was not the attorney's client in her individual capacity, she was nevertheless owed a duty by the attorney because she was a real party in interest. *Id.* 447 N.Y.S.2d at 539. Subsequent New York decisions have explained that an attorney will owe a professional duty to a nonclient in the absence of actual privity of contract only when there exists a relationship between the attorney and the third party "so close as to approach that of privity." *See Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 833, 835, 605 N.E.2d 318, 320, 322 (1992) (holding that relationship between lender and law firm of borrower was sufficiently close to support negligence action).

■ 15. Even if an intended third-party beneficiary is not strictly in privity, we join those jurisdictions that have rejected any stringent privity test as the touchstone of an attorney's duty to a nonclient. *See, e.g., Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16, 19 (1958) (in bank); *Baer,* 447 N.Y.S.2d at 539. In considering relationships giving rise to duty, it seems logical to treat an intended (not incidental) third-party beneficiary as though in privity of contract and accord such a beneficiary traditional remedies in the enforcement of promises and common-law duties in his or her own right and not simply in the enforcement of the promisee's right. As we explain below, however, whether in contract or tort, it is nonetheless the intent of the attorney and client to benefit the third party that forms the basis of a malpractice action by the third party.[3]

16. *—Personal representative in a wrongful death action distinguished from other trustees.* Whitley and Shapiro rely heavily on cases involving legal malpractice claims by trust beneficiaries against the trustee's attorney. In *Spinner v. Nutt,* 417 Mass. 549, 631 N.E.2d 542, 544–45 (1994), the Supreme Judicial Court of Massachusetts upheld a judgment dismissing a complaint by four income and remainder beneficiaries of a testamentary trust against the attorneys for two trustees. Noting that an attorney must advise a trustee to make difficult decisions with regard to the latter's fiduciary duties, the court declined to impose a duty on the trustee's attorneys running to the trust beneficiaries, reasoning that imposition of such a duty in light of the often divergent and conflicting interests of a trustee and trust beneficiaries would create conflicting loyalties that would "impermissibly interfere with the attorney's task of advising the trustee." *Id.*; *see also Rutkoski v. Hollis,* 235 Ill.App.3d 744, 175 Ill.Dec. 826, 830–31, 600 N.E.2d 1284, 1288–89 (1992) (holding that attorney for executor of estate did not owe extra-

**2.** It is not, of course, the foreseeability of injury that gives rise to duty. It is the intent of attorney and client to benefit the third party that gives rise to a duty imposed by law. In this quotation from *Pizel,* foreseeability refers to the element necessary for liability in tort once the duty to a third party is established by contract. *Cf. Flores v. Baca,* 117 N.M. at 312, 871 P.2d at 968 (noting that foreseeability arises in contract cases in an-

swering whether special damages were contemplated).

**3.** We note that aside from malpractice, a third party has traditional tort claims against an attorney for misrepresentation, fraud, and collusion, none of which depend upon a duty arising out of contract.

contractual duty to beneficiary of estate regarding advice on estate tax liabilities). These cases comport with the general rule that an attorney retained by a trustee "is not under a liability to the beneficiaries of the trust for participation in the breach of trust, unless he knew or should have known that he was assisting the trustee to commit a breach of trust." 4 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 326.4, at 310 (4th ed. 1989).

■■■ 17. At first blush, the attorneys' reliance upon trust cases appears well placed as there is language in early New Mexico cases decided under the Wrongful Death Act that describes the personal representative as a "statutory trustee." *See, e.g., Baca v. Baca,* 71 N.M. 468, 474, 379 P.2d 765, 769 (1963) (stating that personal representative sues as trustee on behalf of statutory beneficiaries); *Henkel v. Hood,* 49 N.M. 45, 51, 156 P.2d 790, 794 (1945) (stating that personal representative serves as a statutory trustee "for discoverable and identifiable beneficiaries in the line of named kinship or descent"). A closer examination, however, reveals that a personal representative is not a trustee in the traditional sense. A trustee in the traditional sense has broad discretionary powers over the estate assets and must make difficult investment and distribution decisions. The attorney for the trustee must assist the trustee to make these discretionary decisions. A personal representative under the Wrongful Death Act, by contrast, must simply distribute any proceeds obtained in accordance with the statute and has no discretionary authority. As argued most persuasively by Leyba, the personal representative has no authority *per se* to act as trustee or conservator with respect to wrongful death proceeds distributable to a statutory benefi-

ciary who is still a minor.[4] The personal representative's lack of discretionary powers over any wrongful death recovery makes the trust cases inapposite.

18. *The Washington test adopted.* Most jurisdictions that recognize a nonclient's cause of action in tort for malpractice do apply the multi-factor balancing test that Leyba suggests we apply in New Mexico. Our Court of Appeals, however, has here rejected the test as inapplicable to lawyer malpractice.

Leyba urges us to apply a balancing test first articulated in New Mexico by *Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 440 P.2d 798 (1968).... Judge Bratton applied this balancing test in *Wisdom v. Neal,* 568 F.Supp. 4 (D.N.M. 1982), holding that New Mexico law permitted the beneficiaries under a will to sue the lawyers for an estate who had incorrectly distributed the property of the estate per stirpes instead of per capita. No New Mexico appellate decision, however, has applied the balancing test in a lawyer malpractice action.

Although we endorse the holding in *Wisdom,* we refrain from applying the *Steinberg* balancing test in the context of lawyer malpractice.

*Leyba,* 118 N.M. at 440, 882 P.2d at 31. In *Steinberg* this Court said that the determination of a building contractor's liability to successive homeowners

is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that he suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suf-

---

4. In addition to their other arguments, Whitley and Shapiro rely on NMSA 1978, Section 46-1-2 (Repl.Pamp.1989), which provides that

A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary....

The limits of liability generally applicable to persons paying money to an authorized fiduciary do not, however, supersede specific professional

duties arising out of a contract to prosecute a wrongful death action. As we discuss later, an attorney who contracts to undertake a wrongful death case will be implied to have done so with the intent to benefit the statutory beneficiaries. The attorney's attendant liability for failure to use professional skill is not measured by good faith and is not limited by the foreseeability of defalcation by the personal representative. A need to protect the beneficiary from the attorney's client is not the source of the attorney's duty.

fered, and [5] the policy of preventing future harm.

*Id.* 79 N.M. at 125, 440 P.2d at 800 (quoting *Stewart v. Cox*, 55 Cal.2d 857, 13 Cal.Rptr. 521, 524, 362 P.2d 345, 348 (1961) (in bank)). We think the Court of Appeals erred when it rejected all balancing tests as an appropriate measure of an attorney's responsibility in tort to a nonclient, and with an important modification we adopt the test established in *Steinberg* as the test for determining when an attorney will owe a duty to a nonclient.

19. In *Biakanja*, 320 P.2d at 19, the California Supreme Court first enunciated a list of factors (identical to those adopted in *Steinberg*) to be balanced in determining when a defendant will be liable to a third person not in privity. The California court subsequently applied this list of factors to determine that an attorney who had prepared a will but negligently failed to direct proper attestation was liable in tort to an intended beneficiary. *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 825, 364 P.2d 685, 689 (1961) (in bank), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962). *Lucas* characterized *Biakanja* as holding that the determination "whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff." *Lucas*, 364 P.2d at 687. To the list of five factors enunciated in *Biakanja*, *Lucas* added a sixth, applicable in cases involving the scope of an attorney's duty: "whether recognition of liability ... would impose an undue burden on the profession." *Lucas*, 364 P.2d at 688. Our Court of Appeals has acknowledged that in the malpractice context, "[t]he [*Lucas*] balancing test has been cited with approval and accepted with near unanimity by those jurisdictions which have examined the issue." *Leyba*, 118 N.M. at 440, 882 P.2d at 31 (quoting 1 Mallen & Smith § 7.11, at 383).

20. The Washington Supreme Court, in a case not involving wrongful death benefits, has offered a useful test for determining when an attorney who is hired by the personal representative of an estate owes a duty of care to the beneficiaries of the estate. That court apparently has combined a threshold third-party-beneficiary test and the multi-factor balancing test.

The intent to benefit the plaintiff is the first and threshold inquiry in our modified multi-factor balancing test, which we construe to have the following elements:

(1) the extent to which the transaction was intended to benefit the plaintiff;

(2) the foreseeability of harm to the plaintiff;

(3) the degree of certainty that the plaintiff suffered injury;

(4) the closeness of the connection between the defendant's conduct and the injury;

(5) the policy of preventing future harm; and

(6) the extent to which the profession would be unduly burdened by a finding of liability.

Thus, under the modified multi-factor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained. While the answer to the threshold question does not totally resolve the issue, no further inquiry need be made unless such an intent exists.

*Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080, 1084 (1994). To the extent that the claim of the nonclient is based upon breach of a duty of care and not upon some other breach of contract or claims of misrepresentation, fraud, or collusion, the *Trask* court's combining of the two tests, and stating the elements of the duty as quoted above, is a good analysis of an almost universally accepted test of duty. We adopt this test for analyzing the duty owed to statutory beneficiaries by an attorney for the personal representative prosecuting a wrongful death claim.

21. *Intent to benefit statutory beneficiaries an implied-in-law term of attorney-client contract for representation of personal representative in wrongful death action.* Under the test just adopted we must determine whether Whitley, Shapiro, and their client Corrine intended by their attorney-client agreement to benefit Phillip Le-

Roy, thus giving rise to a duty of care running from Whitley and Shapiro to Phillip LeRoy. The authority of a personal representative to bring suit for wrongful death stems solely from the Wrongful Death Act, *Henkel,* 49 N.M. at 47, 156 P.2d at 791, and the personal representative's sole task under that Act is to distribute any recovery in strict accordance with the statute. The legislature has by statute specifically designated a discrete and identifiable class of beneficiaries of any wrongful death claim, and each beneficiary shares equally with the others regardless of what may have been his or her individual pecuniary expectancy in the continued life of the deceased. Under the Act there can be no other purpose of an attorney-client agreement to pursue claims for wrongful death than to benefit those persons specifically designated by the Act as statutory beneficiaries. We conclude therefore that, subject to the adversarial exception discussed below, the very nature of a wrongful death action is such that we will imply in law a term in every agreement between an attorney and personal representative that the agreement is formed with the intent to benefit the statutory beneficiaries of the action.[5]

22. *Weight of "undue burden" or "adversarial exception."* With regard to the conflicting-loyalties arguments made by Whitley and Shapiro, we first observe that when an attorney's duty to the third-party nonclient arises from the *mutual* intent of the attorney and client to benefit that third party, by definition there can be no conflict of interest inimical to the attorney's professional responsibilities. *Cf. Franko v. Mitchell,* 158 Ariz. 391, 396–98, 762 P.2d 1345, 1350–52 (App.1988) (affirming summary judgment denying third party's breach of contract claim against attorney because there was no evidence that attorney had any understanding with his acknowledged client that the purpose of drafting a promissory note was to benefit the third party). We also observe that while, through the Wrongful Death Act, the legislature has designated an "agency for the prosecution of the suit thereby provided for," *Henkel,* 49 N.M. at 48, 156

P.2d at 791 (quoting *Wilson v. Pollard,* 190 Ga. 74, 8 S.E.2d 380, 382 (1940)), the vesting of control over litigation decisions in the personal representative is not determinative of whether an attorney owes a duty to a third party. *See Hermann v. Frey,* 537 N.E.2d 529, 531 (Ind.Ct.App.1989) (distinguishing case which held that relatives of decedent could not challenge contingent fee arrangement from issue whether attorney for a decedent's estate owes a duty to the decedent's surviving heir).

23. With respect to the weight to be given the consideration of any burden on the legal profession created by recognition of a duty running to a nonclient, the *Trask* court observes that

[t]he policy considerations against finding a duty to a nonclient are the strongest where doing so would detract from the attorney's ethical obligations to the client. This occurs where a duty to a nonclient creates a risk of divided loyalties because of a conflicting interest or of a breach of confidence. A conflict of interest arises in estate matters whenever the interest of the personal representative is not harmonious with the interest of an heir. Because estate proceedings may be adversarial, we conclude that policy considerations also disfavor the finding of a duty to estate beneficiaries.

*Trask,* 872 P.2d at 1085 (citations omitted). We agree with this observation and, insofar as the personal representative of a probate estate has much broader discretionary authority than a personal representative under the Wrongful Death Act, *Trask* correctly concluded that "the estate and its beneficiaries are incidental, not intended, beneficiaries of the attorney-personal representative relationship." *Id.*

24. The *Trask* court's observation regarding the weight to be given the burden on the profession also comports with the weight of authority that an attorney owes no duty to the client's adversary. Thus we have held that the attorneys representing the defen-

---

5. We caution that we do not intend to limit today's recognition of an attorney's duty solely to beneficiaries of statutory rights and interests.

Certainly, an attorney who agrees to represent a parent or next friend in pursuit of a cause of action for a child would be similarly situated.

dant in a previous lawsuit did not owe a duty to the plaintiff. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 750 P.2d 118 (1988). In *Garcia* we stated that

> An attorney has no duty however to protect the interests of a non-client adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services and that the attorney's undivided loyalty belongs to the client. Negligence is not a standard on which to base liability of an attorney to an adverse party. An adverse party cannot justifiably rely on the opposing lawyer to protect him from harm; negligence contemplates a legal duty owing from one party to another and the violation of that duty by the person owing it. In the present context, this duty is owed by the lawyer to his client and to the legal system. Negligence does not form a basis for suit by an opposing party.
>
> ... As a matter of public policy in order to maintain and enforce the fidelity and duty of the attorney toward the client, we cannot jeopardize the integrity of the adversarial system by imposing a professional duty on an attorney toward an adverse party.

*Id.* at 761, 750 P.2d at 122 (citations omitted). The plaintiff's theory of liability for negligent misrepresentation was deemed precluded because "[t]he very nature of the adversary process precludes justifiable reliance by an opposing party." *Id.* at 762, 750 P.2d at 123.

25. At least one court has held that the presence of a conflict of interest between the personal representative and the. statutory beneficiaries of a wrongful death action prohibits recognition of any duty running from the personal representative's attorney to the beneficiaries. In *Klancke v. Smith,* 829 P.2d 464, 466 (Colo.Ct.App.1991), *cert. denied,* May 18, 1992, the Colorado Court of Appeals held that because there was no evidence of fraud or malice on the part of attorneys for the surviving widow who recovered damages for the wrongful death of her husband, the latter's children were owed no duty by the attorneys with respect to their payment of the children's share of the proceeds to their widow client. In a separate action the chil-

dren recovered a $190,000 judgment against the widow. The court acknowledged that, while the wrongful death claim was pending, a dispute arose between the children and the widow, the latter having exclusive statutory right to bring the action. The widow took the position, erroneously, that the children were required to prove their net pecuniary loss. An attorney entered an appearance in the wrongful death action on behalf of certain of the children. The court affirmed a summary judgment for the widow's attorneys because the children did not retain them and no express attorney-client relationship existed between the attorneys and the children. In other jurisdictions, including New Mexico, these two factors should not be determinative. Crucial to the Colorado court's conclusion, however, was the following observation: "[T]he record reveals a developing adversity between the children and [the surviving spouse] concerning which defendants could not ethically represent both sides. Under these circumstances, defendants' only client was [the surviving spouse]." *Id.* at 466. It is in this sense that the implied-in-law intent to benefit statutory beneficiaries is subject to the adversarial exception.

26. By contrast, in *Jenkins v. Wheeler,* 69 N.C.App. 140, 316 S.E.2d 354, *review denied,* 311 N.C. 758, 321 S.E.2d 136 (1984), the Court of Appeals of North Carolina applied a general balancing test when holding that the attorney for the administratrix owed a duty to the sole beneficiary of a wrongful death action. Because under the facts of that case the administratrix had an interest in the estate of the deceased that conflicted with the interest of the beneficiary of any wrongful death recovery, the court held that "[b]y continuing to represent both of these conflicting interests, [the attorney] subjected himself to an action for malpractice." *Id.* 316 S.E.2d at 358. Therefore, rather than applying the adversarial exception to deny the existence of a duty to the nonclient, the Court found a duty to exist and a breach of that duty to arise out of continuing representation of conflicting interests. *Id.* We concur and believe that any such conflict should be resolved by notice to the nonclient that the latter cannot rely on the attorney to act for his or her benefit.

778

27. Our Court of Appeals has deemed the possibility of an adversarial relationship between client and third party to require that we reject as a matter of law any duty on the part of the attorney to the nonclient as "likely to interfere with the desirable relationship of trust and confidence between a lawyer and client." *Leyba*, 118 N.M. at 441, 882 P.2d at 32. We agree that when recognition of a duty running from an attorney to the third party would burden the attorney's duty to the client in a wrongful death action—as when an adversarial relationship develops between the client and the third party—as a matter of public policy the attorney's duty to the third party should end. The fact that an attorney identifies a conflict, actual or potential, should not, however, in itself negate the duty owed to the statutory beneficiaries. Should a conflict arise, the adversarial exception negates duty only if the third party knows or should know that he or she cannot rely on the attorney to act for his or her benefit. *See, e.g.,* SCRA 1986, 16–107(A), –116(A)(1), –116(D) (Repl.Pamp.1995) (prohibiting lawyer from undertaking representation adverse to client, detailing instances in which disqualification is mandatory, and specifying procedures for terminating representation when there is a conflict of interest). We cannot accept the premise of the Court of Appeals that "[t]he burden would be intolerable," *Leyba*, 118 N.M. at 441, 882 P.2d at 32, if we were to recognize under appropriate facts that a professional responsibility is owed directly to the intended beneficiary of the attorney-client relationship.

28. *Reasonableness is a question of fact.* Leyba has argued for the recognition of very specific duties. In particular, she urges this Court to hold that, in the event of a minor statutory beneficiary, attorneys pursuing wrongful death claims have a duty to distribute the proceeds to a conservator. While having a court-monitored conservator appointed and then distributing the proceeds to that conservator is one way an attorney may protect the interest of the statutory beneficiaries, it is not the only way. We do not wish to dictate that attorneys pursue a specific and limited course of action, and we think it wiser to hold that attorneys have a duty to exercise reasonable care to ensure

that the statutory beneficiaries actually receive the proceeds of any wrongful death claim. As always, what is reasonable is a question of fact to be determined in light of all the surrounding circumstances.

29. *Conclusion.* For the foregoing reasons the judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion.

30. **IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.