The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: July 25, 2024

**NO. S-1-SC-40066**

**JASON WATERBURY,**

Plaintiff-Petitioner,

v.

**GINI NELSON, d/b/a**
**GINI NELSON LAW OFFICE,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Francis J. Mathew, District Judge**

Law Offices of Daymon B. Ely
Daymon B. Ely, Esq.
Albuquerque, NM

for Petitioner

Dixon Scholl Carrillo P.A.
Briggs F. Cheney
Spring V. Schofield
Albuquerque, NM

for Respondent

**OPINION**

**BACON, Justice.**

**I.    INTRODUCTION**

{1}    On interlocutory appeal to the New Mexico Court of Appeals, the district court certified a single issue of law: "An alleged violation of a Rule of Professional Conduct, specifically [Rule] 16-403 [NMRA], even with expert testimony, cannot create a duty to a non-client for purposes of civil liability." However, in the present petition for writ of certiorari, Petitioner Jason Waterbury posed a different construction of the issue: whether a New Mexico Rule of Professional Conduct for the legal profession, specifically Rule 16-403, when supported by expert testimony, establishes the standard of care for a lawyer's obligation to a non-client. This Court granted certiorari on the latter question. Petitioner's alteration of the issue certified on interlocutory appeal is material—the certified question concerns duty whereas Petitioner's question concerns breach.[1] And because an analysis of duty necessarily precedes the question of breach, to which the standard of care is relevant, we address

---

[1]Throughout the brief in chief, Petitioner frequently modifies the question presented, further complicating analysis of the issues. For example, Petitioner also articulates the question as follows: "May a trial court remove from the jury's purview, as a matter of law, a legal malpractice/breach of fiduciary duty case where, even though the plaintiff had not retained the attorney, he was reasonably relying on her advice as an unrepresented party and an unintended client?"

both. *See Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 ("[A] negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.").

{2}    In the proceedings below, the district court granted Respondent Gini Nelson's motion for partial summary judgment, concluding, as a matter of law, "an alleged violation of a Rule of Professional Conduct . . . does not create a duty to a non-client for purposes of civil liability." Ultimately, Petitioner seeks reversal of the district court's grant of Respondent's motion for partial summary judgment, arguing (1) duty is a question for the jury, the analysis of which should be guided by Rule 16-403 and supported by expert testimony and (2) Rule 16-403[2], UJI 13-2411 NMRA,

---

[2]For reference, Rule 16-403 (communications with unrepresented persons) provides:

> In communicating on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

and *Spencer v. Barber*, 2013-NMSC-010, 299 P.3d 388, establish both common law duty and the standard of care for a lawyer interacting with a non-client. Petitioner's position that the Rules of Professional Conduct create a duty is contrary to our caselaw. *See Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 2014-NMSC-014, ¶ 1, 326 P.3d 465 (reaffirming that the legal determination of duty is guided by policy). Therefore, we reject Petitioner's argument that the Rules of Professional Conduct create a duty and affirm the district court's grant of partial summary judgment. Nonetheless, we take this opportunity to reaffirm the use of the Rules of Professional Conduct to establish standard of care. Finally, because UJI 13-2411 instructs juries to reference the Rules of Professional Conduct to evaluate both duty and breach, we address the inconsistency created by the UJI by clarifying that the rules may guide only the analysis of the standard of care.

## II. BACKGROUND

### A. Facts

{3}     In 2016, Respondent began representing John Emry in his estate planning. Petitioner was Emry's neighbor and friend, and because of this relationship, Emry requested Petitioner's assistance in matters related to his estate planning. Therefore, Petitioner contacted Respondent on behalf of Emry, who sought assistance in effectuating gifts and bequests to charities, specified individuals, his daughter and

3

only heir, and Petitioner. For this reason, Petitioner regularly communicated with Respondent in his capacity as Emry's agent. Respondent prepared two powers of attorney on behalf of Emry designating Petitioner as attorney-in-fact for personal and estate planning matters. Emry requested that Petitioner, using his power of attorney, sign documents at Los Alamos National Bank (LANB) relating to the POD account on which Petitioner was named beneficiary. As instructed, Petitioner used the power of attorney to sign POD documents at LANB. Later, Respondent prepared two codicils to Emry's will. The second codicil designated Petitioner as the payee on death (POD) beneficiary for the LANB account, an account which contained approximately two million dollars. Petitioner then emailed Respondent requesting a document or letter regarding his designation as beneficiary of the LANB account and stating he had signed documents at LANB on behalf of Emry. This email communication is the basis for Petitioner's malpractice suit. In relevant part the email provides:

> I also wanted to talk with you about obtaining a document/statement/letter etc. from John regarding the LANB account he recently named me as a beneficiary. John had me sign the documents on his behalf this morning, and each of us want to make sure that no questions are raised in the future regarding this decision. John stated tonight that he feels very strongly about me being the beneficiary on the account and he wants this to be documented correctly if any questions were to be raised.

4

{4} It is undisputed Respondent did not respond to Petitioner's email requesting clarification regarding the POD. It is also undisputed that Respondent did not represent Petitioner as his attorney. Upon Emry's death four years later, LANB refused to honor the POD designation because it had been signed by Petitioner, not Emry himself, and the account was absorbed into the probate estate. Approximately half of Emry's estate was left to his daughter. Following receipt of her bequest, Emry's daughter challenged the probate of the estate alleging undue influence by Petitioner. Petitioner settled the undue influence claims with Emry's daughter.

{5} Petitioner asserts that but for Respondent's failure to answer his email query regarding the use of the power of attorney to sign documents at LANB, he would not have "lost a significant amount of money" or could have mitigated the impact of the claims of undue influence. Consequently, Petitioner brought a legal malpractice lawsuit alleging breach of fiduciary duty by Respondent.

**B. Procedural History**

{6} In the district court proceedings, Respondent filed a motion for partial summary judgment arguing she "did not owe Plaintiff a duty of care related to any claim for undue influence, thereby precluding a claim for legal malpractice or breach of fiduciary duty." In essence, Respondent contended that she had no obligation—in other words, owed no duty—to restrain Petitioner from acting beyond the scope

of the power of attorney or shield him from decisions that could prompt claims of undue influence and, further, that no legal authority supported such a duty. Petitioner argued in response, citing *George v. Caton*, that Respondent owed a duty of care to him as a non-client, 1979-NMCA-028, ¶¶ 24-25, 93 N.M 370, 600 P.2d 822, and that Rule 16-403 established the standard of care which he argued Respondent breached. Petitioner did not argue he was owed a duty based on his status as an intended beneficiary.[3] The district court heard arguments on Respondent's motion for partial summary judgment.

{7}     During the hearing, the parties primarily focused on whether Respondent owed a duty and, if so, pursuant to which of the roles Petitioner held in the matter. Respondent argued that cases relied upon by Petitioner, specifically *George* and *Spencer*, did not support the proposition that a duty was created. Petitioner countered, arguing under *Spencer* that the Rules of Professional Conduct can be used to establish both duty and standard of care when supported by expert testimony. Further, Petitioner claimed whether Respondent owed a duty and breached that duty were questions properly brought to a jury, barring any policy reasons to the contrary.

---

[3]Petitioner's remaining claims—not challenged in Respondent's motion for partial summary judgment—include a claim that Petitioner was owed a duty based on his status "as an intended third-party beneficiary."

Prior to the close of argument, Petitioner asked, and the district court agreed, to certify for interlocutory review the question whether Rule 16-403, coupled with expert testimony, can create a duty.

{8}     Nonetheless, the district court entered an order granting Respondent's motion for partial summary judgment. The Court of Appeals denied the application for interlocutory appeal. Petitioner's petition for writ for certiorari followed.

## III.    DISCUSSION

### A.    Duty

#### 1.    Standard of Review

{9}     Petitioner argues Rule 16-403, supported by expert testimony, establishes an attorney's duty to and standard of care for a non-client for purposes of civil liability. Thus, the issue presented calls initially for us to resolve the legal question of duty. Whether there is a duty is a question of law, which we review de novo. *See Herrera*, 2003-NMSC-018, ¶ 6; *Spencer*, 2013-NMSC-010, ¶ 6.

#### 2.    Duty is determined as a matter of law

{10}     The existence of a duty is determined by courts as a matter of law. *See Calkins v. Cox Ests.*, 1990-NMSC-044, ¶ 8, 110 N.M 59, 792 P.2d 36. Thus, "whether a particular defendant owes a duty to a particular plaintiff" is answered in the first instance by reference to statute or common law. *Id.* A statutory duty is a duty

7

expressly created by law or regulation. *See Herrera*, 2003-NMSC-018, ¶ 11 (examining whether defendant owed a statutory duty pursuant to NMSA 1978, Section 66-7-353 (1953)). Absent a statutorily created duty, a court examines whether a duty arises in common law. *Id.* ¶ 14; *see also Torres v. State*, 1995-NMSC-025, ¶ 10, 119 N.M. 609, 894 P.2d 386 ("Courts should make policy in order to determine duty only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the legislature.").

{11}    Common law duties are creatures of policy. *See Calkins*, 1990-NMSC-044, ¶ 8 ("[E]xistence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law."). Our analysis of duty has evolved over time from an evaluation of foreseeability of harm to determine duty of care (*see id.* ¶¶ 12, 18) to an evaluation encompassing both foreseeability and policy (*see Herrera*, 2003-NMSC-018, ¶ 10). But we explicitly repudiated foreseeability in the analysis of duty in *Rodriguez*, 2014-NMSC-014, ¶ 1 ("[W]e clarify and expressly hold that foreseeability is not a factor for courts to consider when determining the existence of duty."). In short, "Policy determines duty." *Torres*, 1995-NMSC-025, ¶ 10.

{12} Thus, in determining duty as a matter of law, courts must "articulate specific policy reasons, unrelated to foreseeability considerations, if deciding that a defendant does not have a duty or that an existing duty should be limited." *Rodriguez*, 2014-NMSC-014, ¶ 1. Accordingly, "Courts should not engage in weighing evidence to determine whether a duty of care exists." *Id.* ¶ 19. Rather, the determination of duty focuses on policy considerations to determine the existence and scope of that duty. *Id.* This "involves an analysis of the relationship of the parties, the plaintiff's injured interests and the defendant's conduct" to determine whether "the plaintiff's interests are entitled to protection." *Calkins*, 1990-NMSC-044, ¶ 11. Therefore, the pertinent question in determining duty is whether policy considerations support imposing a duty to protect a plaintiff's interests. *See id.*

**3. Respondent does not owe a statutory duty to Petitioner as a non-client**

{13} No statutory duty is owed by attorneys to non-clients beyond the duty that arises as to statutory beneficiaries of the attorney's work. *See Spencer*, 2013-NMSC-010, ¶ 45 ("In general, a non-client cannot maintain an action for malpractice against an attorney. There is an exception when the non-client is the intended beneficiary of the attorney's work." (citation omitted)). For purposes of this appeal, Petitioner expressly concedes he is not a statutory beneficiary entitled to protection of his interests on that basis. In addition, Petitioner disclaims reliance on statutes to

establish duty of care. Thus, because Petitioner does not argue Respondent's duty emanates from statute, the analysis proceeds to a determination of whether Respondent owed a common law duty to Petitioner. *See Herrera*, 2003-NMSC-018, ¶ 14.

**4. Sources relied upon by Petitioner do not provide a basis for establishing a common law duty**

{14} Petitioner argues Respondent's common law duty to a non-client derives from three sources: this Court's holding in *Spencer*, Rule 16-403, and UJ1 13-2411. Petitioner's argument is premised on his assertion that a jury, and not a judge, determines duty. This argument is contrary to our caselaw. *See Calkins*, 1990-NMSC-044, ¶ 8; *see also Rodriguez*, 2014-NMSC-014, ¶¶ 1, 16.

**a. *Spencer* does not support the proposition that Rule 16-403 establishes duty as to non-clients**

{15} The Rules of Professional Conduct are not an independent basis for civil liability. *Spencer*, 2013-NMSC-010, ¶ 19. Instead, the rules "*become* relevant when ascertaining the scope of the duty owed by the attorney." *Id.* ¶ 4 (emphasis added). In *Spencer*, the plaintiff sued the defendants, two attorneys, for malpractice alleging fraud, collusion, and misrepresentation. *Id.* ¶¶ 1, 2. The defendants represented the plaintiff's ex-wife who was the personal representative of their daughter's estate. *Id.* ¶ 1. As a statutory beneficiary of his daughter's wrongful death, the plaintiff argued

10

that the defendants made material representations, which induced the plaintiff to sign the agreement. The duty owed to the plaintiff was breached by the defendants convincing him to sign a settlement agreement for a significantly reduced portion of the settlement award. *Id.* ¶¶ 2, 38. The defendants countered that the adversarial exception negated their duty to the plaintiff. *Id.* ¶ 2. When the plaintiff signed the settlement agreement, he was unrepresented by counsel and unaware of the full award to which he was entitled as a statutory beneficiary. *Id.* ¶¶ 2, 36-38.

{16}    In *Spencer*, we considered the narrow issue of "whether the duties a lawyer owes wrongful death statutory beneficiaries are governed, in whole or in part, by the Rules of Professional Conduct." *Id.* ¶ 4 (brackets, internal quotation marks, and citation omitted). Having concluded the defendants owed a statutory duty, we undertook determining its scope toward assessing whether the duty was breached. *Id.* In this context, the *Spencer* Court discussed how the Rules of Professional Conduct could guide analysis of the standard of care. *See id.* We held "plaintiffs may cite [those rules] to establish the appropriate standard of conduct for attorneys to follow." *Id.* ¶ 17. We therefore rejected the plaintiff's argument "that the Rules of Professional Conduct should define the duty owed by the attorney to the statutory beneficiaries." *Id.* ¶ 14. We reasoned that rather than establishing duty, those rules are instead relevant in determining an attorney's standard of care which is "necessary

11

to maintain an action for malpractice." *Id.* ¶ 17. The *Spencer* Court sought to provide plaintiffs alleging malpractice a foothold in making a prima facie case by allowing reference to the Rules of Professional Conduct for the essential element of breach of the standard of care. *See id.* Indeed, when the plaintiff in *Spencer* proposed the rules should be used to establish duty, we summarily rejected the argument. *See id.* ¶ 14.

{17} Petitioner argues *Spencer* modified the holdings of *Garcia v. Rodey*, 1988-NMSC-014, ¶ 12, 106 N.M. 757, 750 P.2d 118 (holding that a "duty of care toward non-clients has been found to exist *only* in those situations where the non-client was an intended beneficiary") and *George*, 1979-NMCA-028, ¶¶ 43-44 (holding, absent a contract, that the "Code of Professional Responsibility did not prohibit [attorney-]defendants from contacting plaintiff [before the running of the limitation period] to resolve the ambiguity [whether an attorney-client relationship existed]"). Petitioner argues *Spencer* created a new rule under which the "Rules of Professional Conduct *can* guide a jury's decision on both the analysis of the duty of the lawyer and the breach of such duty." This reading plainly mischaracterizes *Spencer*'s holding, which explicitly stated the rules "*become* relevant when ascertaining the scope of the duty." *Id.* ¶ 4 (emphasis added). This is to say, the rules only *become* relevant when a duty has been established because there can be no inquiry into the scope of duty where no duty exists.

{18} Moreover, *Spencer* is inapposite to Petitioner's claims. The Court in *Spencer* addressed the narrow issue of breach of the standard of care as to wrongful death statutory beneficiaries. 2013-NMSC-010, ¶ 4. Yet, Petitioner contends that *Spencer* "address[ed] the duties owed by an attorney to an unrepresented non-client, which is the same scenario presented in this case." However, *Spencer* is not factually analogous, nor does its reasoning lend itself to the issue here because, as Petitioner concedes, he is not a statutory beneficiary. For this reason, *Leyba v. Whitley*, a case in which we similarly considered the scope of an attorney's duty to wrongful death statutory beneficiaries, is equally unavailing to Petitioner's argument. *See* 1995-NMSC-066, ¶ 2, 120 N.M. 768, 907 P.2d 172.

**b.      UJI 13-2411 erroneously permits the inference that the Rules of Professional Conduct can be used to establish both duty and standard of care**

{19} According to Petitioner, UJI 13-2411 and the accompanying committee commentary support that (1) the Rules of Professional Conduct guide the analysis of duty and (2) the question of duty is the province of the jury. True, the plain language of UJI 13-2411 permits this interpretation. UJI 13-2411 provides, in relevant part, "Evidence regarding the Rules of Professional Conduct may be considered in deciding whether [the defendant] owed [the plaintiff] a *duty* and whether [the defendant] breached a duty." (Emphasis added.) The Use Notes of UJI

13-2411 advise that the latter instruction "must be given in a legal malpractice case in which the court admits evidence regarding the Rules of Professional Conduct." Thus, it is not unreasonable to infer a jury, instructed under UJI 13-2411, may consider the Rules of Professional Conduct to establish both duty and breach. So, contrary to New Mexico's caselaw, UJI 13-2411 suggests duty is not determined as a matter of law, but instead by a jury who may be guided by the Rules of Professional Conduct. *See Calkins*, 1990-NMSC-044, ¶ 8. Citing both *Garcia* and *Spencer*, the committee commentary explains:

> Although the Rules of Professional Conduct were not intended to create a private cause of action for legal malpractice, *the rules nevertheless may inform the analysis of the duty (or duties)* that a lawyer owed to the client(s) (and possibly to others) as well as the analysis of whether the lawyer breached any such duty (or duties).

UJI 13-2411 comm. cmt. (emphasis added). The committee commentary reflects the same error Petitioner made in conflating duty and standard of care because nowhere in the cited paragraphs of *Spencer* and *Garcia* did we state that the Rules of Professional Conduct guide the analysis of duty. Moreover, to permit the inference that *Spencer* and *Garcia* stand for such a proposition would be contrary to this Court's precedents holding that duty is determined as a matter of law and common law duty is established by analyzing the underlying policy. *See Rodriguez*, 2014-NMSC-014, ¶ 1.

**{20}** Therefore, we reject Petitioner's reliance on the UJI as inconsistent with our caselaw.

**5.   Policy leads to the conclusion that Respondent did not owe a common law duty to Petitioner**

**{21}** Reaffirming New Mexico's adoption of the Comment to Section 7 of the Restatement (Third) of Torts, the *Rodriguez* Court instructed courts as to the proper approach in evaluating duty. *Id.* To that end, we expressly eliminated foreseeability as a factor in determining duty and instead required that "courts must articulate specific policy reasons" when deciding whether a duty exists or whether it should be narrowed. *Id.* ¶ 25. To the contrary, Petitioner argues *Rodriguez* in fact "*restricted* the ability of trial courts to remove the duty question from a jury." However, Petitioner's reading selectively emphasizes *Rodriguez*'s statement that "[t]he court must determine that no reasonable jury would find that the defendant breached the duty of ordinary care." *Id.* ¶ 24. While this statement appears to raise the threshold for courts in determining duty, *Rodriguez*'s direction is subject to the Court's holding that courts are required to articulate policy reasons "if deciding that a defendant does not have a duty or that an existing duty should be limited." *Id.* ¶ 1.

**{22}** Policy leads us to conclude that Respondent did not owe a duty to provide Petitioner with direct advice and thus shield Petitioner from any claim of undue influence. In analyzing the policy dimensions specific to this issue, we consider "the

15

relationship of the parties, the plaintiff's injured interests[,] and the defendant's conduct." *Calkins*, 1990-NMSC-044, ¶ 11. In this case, the lack of a formal client relationship is central to Petitioner's alleged injury and Respondent's conduct. Imposing an affirmative duty to warn a non-client about potential claims of undue influence is not consistent with the aim of Rule 16-403. Rule 16-403 directs lawyers to be clear with non-clients about whom they represent as to avoid misunderstanding. UJI 16-403 comm. cmt. [1]. To conclude otherwise would have significant policy implications for the legal profession by substantially enlarging attorneys' exposure to liability in interactions with non-clients. And, as Respondent persuasively argues, extended to its logical extreme, a finding of duty here could expose estate planning attorneys, in particular, to greater liability for malpractice given the exponential number of beneficiaries and claims. Relatedly, there are policy considerations concerning malpractice insurance and other financial implications as a consequence of finding such a duty arises as to a non-client.

{23}     Respondent does not owe either a statutory or common law duty to Petitioner. Rather, duty is a matter of law determined by courts based on policy, and policy does not support a duty by an attorney to a non-client or non-statutory beneficiary. Further, our caselaw is clear Rule 16-403 cannot be used to establish a duty. To the

16

extent UJI 13-2411 permits otherwise, we direct the Uniform Jury Instruction-Civil Committee to revise the UJI consistent with this opinion.

**B.      Rules of Professional Conduct May Be Used to Establish the Standard of Care for a Legal Malpractice Claim**

{24}      Absent a finding of statutory or common law duty owed, the analysis of a negligence claim cannot proceed. However, we granted the petition for certiorari on a question involving the Rules of Professional Conduct and standard of care. As Petitioner was not faithful to the question certified for interlocutory appeal and our jurisprudential obligation is met, we only discuss this issue briefly.

{25}      "'Duty' and the 'standard of care' are separate and distinct concepts." *Oakey v. May Maple Pharmacy*, *Inc.*, 2017-NMCA-054, ¶ 21, 399 P.3d 939. The analysis of each element is likewise separate and distinct. "Where a 'duty' exists, it generally requires that the defendant's conduct conform to the same standard of care—that of a reasonable person under the same or similar circumstances, usually referred to as the 'ordinary care' standard." *Id*. ¶ 23. When the defendant owes a professional duty, the standard of care is defined according to the standard set by the profession. *Id*. ¶ 25.

{26}      We reaffirm that the Rules of Professional Conduct "illustrate th[e] standard, and plaintiffs may cite them to establish the appropriate standard of conduct for attorneys to follow." *Spencer*, 2013-NMSC-010, ¶ 17. However, citing the rules is,

17

alone, not sufficient to establish the standard of care. *Cf. Oakey*, 2017-NMCA-054, ¶ 25 ("The professional standard of care generally must be established by expert testimony."); *see also Spencer*, 2013-NMSC-010, ¶ 17 ("Proof of the standard of conduct is necessary to maintain an action for malpractice."). Therefore, whether a defendant "conformed to the standard of conduct required by the Rules of Professional Conduct will depend on the evidence introduced at trial." *Id.* ¶ 19. Thus, unlike the determination of duty, whether the standard of care has been matched or breached is a factual inquiry within the province of a jury. *See Rodriguez*, 2014-NMSC-014, ¶ 15.

## IV.   CONCLUSION

{27}    A determination of legal duty is a question for the district court to resolve, and the Rules of Professional Conduct do not create a legal duty. Therefore, we affirm the district court's partial grant of summary judgment. Further, we refer this matter to the Uniform Jury Instructions-Civil Committee to revise UJI 13-2411 to bring it into conformity with this opinion.

{28}    **IT IS SO ORDERED.**

_____
**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**