IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-010

Filing Date: February 28, 2013

Docket No. 33,133

HERMAN SPENCER,

Plaintiff-Petitioner,

v.

PAUL BARBER, BARBER & BORG, L.L.C.,
and ELLEN SAM, as personal representative of
the ESTATE of HERMANDA SPENCER (deceased),

Defendants-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Grant L. Foutz, District Judge

Luebben, Johnson & Barnhouse, L.L.P.
Dolph Barnhouse
Kelli J. Keegan
Albuquerque, NM

for Petitioner

Madison & Mroz, P.A.
M. Eliza Stewart
Jacqueline A. Olexy
Albuquerque, NM

for Respondents

Montgomery & Andrews, P.A.
Sean E. Garrett
Albuquerque, NM

for Amicus Curiae New Mexico Defense Lawyers Association

Law Office of Carpenter & Stout, Ltd.

1

David J. Stout
Albuquerque, NM

Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**CHÁVEZ, Justice.**

**{1}** Paul Barber and his law firm, Barber & Borg, L.L.C. (Barber), were the attorneys for Ellen Sam. Barber filed a lawsuit against numerous defendants for injuries Sam sustained when her car was struck from behind on Interstate 40 (I-40). Barber also represented Sam in her capacity as the personal representative of the estates of her daughter and granddaughter, both of whom died from injuries they sustained in the collision. At the time of the collision, Sam had stopped her car on I-40 to trade places with one of her passengers, Daniel Begay. At some time during his representation of Sam, Barber learned that Sam had been drinking alcohol before the collision and that she had "parked at night with the lights off in a lane of traffic on [I-40], following which the car was struck by a truck."

**{2}** Barber also learned at some time during the litigation that Sam, who was a statutory beneficiary of her daughter's estate, took the position that the other statutory beneficiary, her ex-husband, Herman Spencer, was not entitled to share in any wrongful death proceeds because he had abandoned their daughter. Based on Sam's position, Barber approached Spencer in person with a settlement agreement, which Spencer ultimately signed, that reduced Spencer's entitlement to proceeds from the wrongful death litigation. Spencer later hired an attorney, who wrote to Barber and challenged the validity of the agreement. Barber filed a lawsuit against Spencer on Sam's behalf to enforce the settlement agreement. Spencer then counterclaimed against Sam and filed a third-party complaint against Barber for malpractice, fraud, collusion, and misrepresentation. The district court granted Barber summary judgment on the grounds that under *Leyba v. Whitley*, 120 N.M. 768, 776, 778, 907 P.2d 172, 180, 182 (1995), Barber did not owe a duty to Spencer as a statutory beneficiary because Spencer and Sam were adverse parties, and Barber represented Sam.

**{3}** Spencer appealed, and the Court of Appeals affirmed in part and reversed in part. *Spencer v. Barber*, 2011-NMCA-090, ¶ 2, 150 N.M. 519, 263 P.3d 296. The Court of Appeals agreed that Spencer could not sue Barber for malpractice because Spencer became Sam's adverse party, thereby negating any duty that Barber owed Spencer as a statutory beneficiary. *Id.* In so holding, the Court of Appeals rejected, as "an unjustified extension" of *Leyba*, Spencer's argument that Barber violated numerous rules under the New Mexico Rules of Professional Responsibility, and therefore he was required to withdraw from representing the personal representative. 2011-NMCA-090, ¶¶ 23-24. However, the Court of Appeals reversed the summary judgment to the extent it enforced the settlement

2

agreement because it found genuine issues of material fact regarding the allegations that Barber made material misrepresentations which induced Spencer to sign the agreement. *Id.* ¶¶ 38, 42-43. Barber did not ask us to review this portion of the Court of Appeals' opinion.

**{4}** We granted certiorari to consider the following two questions: (1) "[w]hether the duties a lawyer owes wrongful death statutory beneficiaries are governed, in whole or in part, by the Rules of Professional Conduct"; and (2) "[w]hether an adversarial relationship precludes only contract based malpractice claims and not independent tort claims." We answer the first question by reaffirming our holding in *Sanders, Bruin, Coll & Worley, P.A. v. McKay Oil Corp.*, 1997-NMSC-030, ¶ 16, 123 N.M. 457, 943 P.2d 104, that the Rules of Professional Conduct provide guidance in determining lawyers' obligations to their clients. A statutory beneficiary under the Wrongful Death Act, NMSA 1978, §§ 41-2-1 to -4 (1882, as amended through 2001), is an intended beneficiary of the agreement between the attorney and the personal representative. *Leyba*, 120 N.M. at 776, 907 P.2d at 180. Therefore, the statutory beneficiary may sue the personal representative's attorney when the attorney harms the statutory beneficiary by failing to exercise reasonable skill and care during the attorney's representation of the personal representative. *See id.* at 771, 907 P.2d at 175 (stating that an intended third-party beneficiary of an attorney-client contract has a remedy against the attorney). The Rules of Professional Responsibility thus become relevant when ascertaining the scope of the duty owed by the attorney to the personal representative and how a breach of that duty may have harmed the statutory beneficiary.

**{5}** With respect to the second question, the adversarial exception we announced as dicta in *Leyba* may preclude a malpractice action, whether it is in tort or in contract. However, the adversarial exception does not preclude "traditional tort claims against an attorney for misrepresentation, fraud, and collusion, none of which depend upon a duty arising out of [the] contract" between the attorney and the personal representative. *Id.* at 773 n.3, 907 P.2d at 177 n.3. Therefore, in this case, Spencer's non-malpractice tort claims are not barred by *Leyba*. In addition, we conclude that the adversarial exception does not preclude Spencer's malpractice claim against Barber because there exist genuine issues of material fact regarding whether Barber failed to exercise reasonable skill and care in his representation of Sam as the personal representative, and if so, whether such failure harmed Spencer.

## DISCUSSION

**{6}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Because this is a question of law, we review de novo. *Id.*

### A. The Rules of Professional Conduct Establish the Appropriate Standard of Conduct for Attorneys in New Mexico

**{7}** The first issue requires this Court to determine to what extent the Rules of

3

Professional Conduct govern the duty owed by an attorney to wrongful death statutory beneficiaries. To put this discussion in context, we first discuss the procedure for wrongful death litigation and examine our opinion in *Leyba*.

**{8}**   Wrongful death lawsuits must be brought in the name of the personal representative of an estate. Section 41-2-3; *Kilkenny v. Kenney*, 68 N.M. 266, 268, 361 P.2d 149, 150-51 (1961), *superseded by statute on other grounds as stated in* 1961 N.M. Laws, ch. 202, § 1, *as recognized in Lujan v. Regents of the Univ. of Cal.*, 69 F.3d 1511, 1519-20 (10th Cir. 1995), *and State Farm Mut. Auto. Ins. Co. v. Luebbers*, 2005-NMCA-112, ¶ 42, 138 N.M. 289, 119 P.3d 169. The Wrongful Death Act identifies the beneficiaries of the lawsuit in Section 41-2-3. Statutory beneficiaries are generally not permitted to join as parties in a wrongful death lawsuit because the personal representative is the beneficiary's trustee, *Stang v. Hertz Corp.*, 81 N.M. 348, 350, 467 P.2d 14, 16 (1970), and because the personal representative and any beneficiaries should have the same interest—to recover as large an award as possible from the tortfeasors who caused the decedent's death. *See Dominguez v. Rogers*, 100 N.M. 605, 608, 673 P.2d 1338, 1341 (Ct. App. 1983) (noting that would-be intervenor had "identical" interest to personal representative). The personal representative has a duty to act with reasonable care regarding the interests of the statutory beneficiaries and must distribute proceeds from a wrongful death lawsuit to the statutory beneficiaries in strict accordance with the Wrongful Death Act. *Leyba*, 120 N.M. at 774, 778, 907 P.2d at 178, 182.

**{9}**   Although the personal representative may be, and often is, a statutory beneficiary, for purposes of the attorney-client relationship, the client is the personal representative. *See McTaggart v. Lindsey*, 509 N.W.2d 881, 884 (Mich. Ct. App. 1993) ("[T]he personal representative can be considered the lawyer's client for the purposes of ethical duties of loyalty, confidentiality, and conflicts."). In addition, the attorney owes a duty to provide services to the personal representative with reasonable skill and care. *Leyba*, 120 N.M. at 772, 907 P.2d at 176 ("[T]he common law of torts . . . recognizes an attorney's duty to provide professional services with the skill, prudence, and diligence of attorneys of ordinary skill and capacity."); *see also George v. Caton*, 93 N.M. 370, 376, 600 P.2d 822, 828 (Ct. App. 1979) (describing an attorney's implied representations and duties when he takes a case). What happens if the attorney breaches his duty to the personal representative and, in so doing, harms the statutory beneficiaries? We attempted to provide a comprehensive answer to this question in *Leyba*.

**{10}**   In *Leyba*, the mother of a deceased adult son hired two attorneys to represent her as the personal representative of her son's estate in a wrongful death lawsuit against medical providers. 120 N.M. at 770, 907 P.2d at 174. The attorneys ultimately settled the litigation and disbursed the settlement funds to the personal representative. *Id.* At the time they disbursed the funds, the attorneys knew that the sole statutory beneficiary of the decedent's estate under the Wrongful Death Act was the decedent's infant son. *Id.* The personal representative misappropriated the proceeds, leaving only a small fraction of the proceeds for the decedent's son. *Id.* The minor child's conservator sued the attorneys for legal

4

malpractice. *Id.* at 769, 907 P.2d at 173. We upheld the right of the statutory beneficiary to sue the attorneys. *Id.* at 770, 776, 907 P.2d at 174, 180. In so doing, we concluded that the attorneys owed a duty to the statutory beneficiary as an intended beneficiary of the agreement between the attorneys and the personal representative. *Id.* We assumed that the statutory beneficiary's contractual remedy was based on the "duty running from the attorney to the client [the personal representative,] rather than from the attorney to the third party [the statutory beneficiary]." *Id.* at 771, 907 P.2d at 175. We explained the duty as follows: "As with any service contract, an implied term of an attorney's contract to provide professional services for the benefit of a third party is the promise to render services with reasonable skill and care." *Id.*

**{11}** At issue in *Leyba* was whether the attorneys exercised reasonable skill and care in advising the personal representative regarding her fiduciary duty to disburse the funds to the statutory beneficiary. *Id.* The personal representative and the attorneys presented conflicting evidence regarding whether the attorneys told the personal representative about her fiduciary responsibilities. *Id.* However, it was undisputed that the attorneys did not provide written instructions to the personal representative regarding her responsibilities in connection with the settlement proceeds. *Id.*

**{12}** The personal representative's duty was to distribute the wrongful death proceeds to the sole statutory beneficiary. *Id.* at 774, 907 P.2d at 178. The attorneys' duty was "to exercise reasonable care to ensure that the statutory beneficiaries actually receive[d] the proceeds of any wrongful death claim." *Id.* at 778, 907 P.2d at 182. In *Leyba*, the conservator invited us to hold that "in the event of a minor statutory beneficiary, attorneys pursuing wrongful death claims have a duty to distribute the proceeds to a conservator." *Id.* We declined her invitation and simply held that "what is reasonable is a question of fact to be determined in light of all [of] the surrounding circumstances." *Id.*

**{13}** Complicating this case, however, was the dicta in our opinion discussing the adversarial exception. After holding that an attorney in a wrongful death action owes a duty to act with due care regarding the interests of the intended beneficiaries, we engaged in a discussion of when and under what circumstances such a duty may be negated. *Id.* at 776-78, 907 P.2d at 180-82. This was described as the "adversarial exception," which arises when the attorney is presented with a conflict of interest. *Id.* at 776, 907 P.2d at 180 (internal quotation marks omitted). We agreed with the court in *Jenkins v. Wheeler*, 316 S.E.2d 354, 358 (N.C. Ct. App. 1984), that the adversarial exception does not operate to negate the attorney's duty of reasonable care to the intended beneficiary; instead, a breach of that duty occurs when the attorney continues to represent conflicting interests. *Leyba*, 120 N.M. at 777, 907 P.2d at 181. We suggested that "any such conflict should be resolved by notice to the nonclient that the latter cannot rely on the attorney to act for his or her benefit." *Id.*

**{14}** In this case, Spencer argues that the Rules of Professional Conduct should define the duty owed by the attorney to the statutory beneficiaries and that duty should be the same as

the duty owed to a client. Barber argues that the Rules of Professional Conduct do not apply, and that as long as the statutory beneficiary knows or has reason to know that he or she cannot rely on the attorney to act for his or her benefit, the attorney does not owe a duty to the statutory beneficiary. Although we agree with Spencer that the Rules of Professional Conduct are relevant in a malpractice case, we do not agree that the duties owed to a client are the same duties owed to an intended beneficiary. As we will discuss, the Rules of Professional Conduct are relevant in determining the professional responsibilities that an attorney has to his or her client. These responsibilities are relevant when an intended beneficiary pursues a malpractice case against an attorney on the basis that the attorney's breach of duty to the client harmed him or her as the intended beneficiary of the attorney-client agreement.

**{15}** The New Mexico Rules of Professional Conduct state that "[v]iolation of a rule should not *itself* give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." *Id.*, Scope (2008) (emphasis added); *see also Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 762, 750 P.2d 118, 123 (1988) (holding that violations of the rules do not give rise to a private cause of action). However, this does not mean that the rules are irrelevant in a legal malpractice lawsuit. While "the Rules of Professional Conduct . . . cannot be used to launch a malpractice claim[,] . . . [they] still provide guidance in ascertaining the extent of lawyers' professional obligations to their clients." *Sanders*, 1997-NMSC-030, ¶ 16.

**{16}** The annotations to the American Bar Association's Model Rules of Professional Conduct support this approach. While the annotations are not legally binding in New Mexico, these annotations inform our understanding of the intent behind our rules because the relevant section of the New Mexico Rules of Professional Conduct is identical to its equivalent in the ABA Model Rules. *Compare* N.M. Rules of Prof'l Conduct, Scope, *with* ABA Ann. Model Rules of Prof'l Conduct, Preamble & Scope ¶ 20 (7th ed. 2011). The annotation to the ABA Scope notes that "most courts do look to the ethics rules as evidence of standards of conduct and care, particularly in actions for legal malpractice or breach of fiduciary duty." Model Rules of Prof'l Conduct, annotation to Preamble & Scope ("Ethics Rules as Evidence of Standards of Conduct and Care").

**{17}** Proof of the standard of conduct is necessary to maintain an action for malpractice. One element of a legal malpractice claim is "breach of [a] fiduciary relationship by the defendant attorney." *Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1261 (D.N.M. 2000). To prove this breach, a plaintiff must establish that the defendant attorney violated the required standard of conduct. *See id.* ("[L]egal malpractice based upon breach of duty concerns violations of a standard of conduct." (quoting *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah Ct. App. 1996))). The New Mexico Rules of Professional Conduct illustrate that standard, and plaintiffs may cite them to establish the appropriate standard of conduct for attorneys to follow. *See, e.g.*, *CenTra, Inc. v. Estrin*, 538 F.3d 402, 410 (6th Cir. 2008) ("[A] violation of the rules may be probative in establishing an independent cause of action."); *Sealed Party v. Sealed Party*, No. Civ. A. H-04-2229, 2006 WL 1207732 (S.D.

6

Tex. May 4, 2006) at *8 (noting that while violation of Texas rules does not give rise to a private cause of action or create a presumption that a legal duty has been breached, "Texas and Federal courts regularly have referred to the Texas Rules to help define standards of attorney conduct in tort cases").

{18} In *Leyba* we implied that the Rules of Professional Conduct were relevant and referenced the rules in our discussion of how an attorney may avoid a conflict of interest. We stated:

> We agree that when recognition of a duty running from an attorney to the third party would burden the attorney's duty to the client in a wrongful death action—as when an adversarial relationship develops between the client and the third party—as a matter of public policy the attorney's duty to the third party should end. The fact that an attorney identifies a conflict, actual or potential, should not, however, in itself negate the duty owed to the statutory beneficiaries. Should a conflict arise, the adversarial exception negates duty only if the third party knows or should know that he or she cannot rely on the attorney to act for his or her benefit. *See, e.g.*, [Rules] 16-107(A), -116(A)(1), -116(D) [NMRA] (prohibiting lawyer from undertaking representation adverse to client, detailing instances in which disqualification is mandatory, and specifying procedures for terminating representation when there is a conflict of interest).

120 N.M. at 778, 907 P.2d at 182. We cited the Rules of Professional Conduct to illustrate the standard conduct expected of a lawyer when confronted with a conflict of interest. *Id.*

{19} In *Sanders* we further emphasized that the Rules of Professional Conduct are relevant to a legal malpractice case. There we recognized that the termination of an attorney-client relationship, when carried out negligently, can serve as the basis for a legal malpractice claim. 1997-NMSC-030, ¶¶ 14, 15. The defendant attorneys in *Sanders* argued that the Rules of Professional Conduct governing withdrawal from the representation of a client could not be used to bring a malpractice case. *Id.* ¶ 16. We agreed that these rules could not be used as a basis for civil liability, but we emphasized that "such professional rules still provide guidance in ascertaining the extent of lawyers' professional obligations to their clients." *Id.* (citing *Wood v. Parker*, 901 S.W.2d 374, 379 (Tenn. Ct. App. 1995) (holding that Rules of Professional Conduct are relevant in a legal malpractice claim based on alleged negligent withdrawal)). Therefore, in this case, although the Rules of Professional Conduct cannot be used as a basis for civil liability, the rules may be used to explain Barber's professional obligations to Sam as the personal representative, and by extension to the intended beneficiaries. The determination of whether or not Barber conformed to the standard of conduct required by the Rules of Professional Conduct will depend on the evidence introduced at trial.

**B.       A Conflict of Interest Arose When Sam, as the Personal Representative, Sought**

**to Challenge Spencer's Entitlement to a Full Share of the Wrongful Death Proceeds in Favor of Sam's Receiving a Larger Share**

**{20}** In this case, as in *Leyba*, the contract at issue is the agreement between the attorney in a wrongful death lawsuit and his client, the personal representative, who is responsible for suing on behalf of the statutory beneficiaries under Section 41-2-3. On May 5, 2006, Sam filed suit for her own injuries and as personal representative of Hermanda's and Lydia's estates against seven defendants: the truck driver who struck Sam's car, the trucking company who employed the truck driver, the company's owner, three insurance providers, and Sam's passenger, Daniel Begay. *Sam v. Kalenik*, No. CV 2006-242-2 (N.M. 11th Judicial Dist. Court Apr. 26, 2006) (the *Kalenik* litigation). Barber represented Sam both in her individual capacity for her personal injuries and as personal representative in the *Kalenik* litigation.

**{21}** Because Hermanda died as an unmarried adult with no surviving children, her parents would ordinarily share equally in any recovery for her wrongful death. Section 41-2-3(F) (providing that if specific subsections do not apply, wrongful death proceeds "shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons"); NMSA 1978, § 45-2-103(A)(2) (1993) (amended 2012) (providing that intestate estate of decedent without surviving spouse or descendants is distributed equally to decedent's parents). In addition, under the facts of this case, Hermanda, who briefly survived her daughter, was a statutory beneficiary of the wrongful death proceeds of Lydia's estate. Because Hermanda died before the proceeds were paid, Hermanda's share of the proceeds belongs to her estate, and would ordinarily also be distributed to her surviving parents, Sam and Spencer. Sections 41-2-3(F), 45-2-103(A)(2).

**{22}** As we previously stated, the personal representative has a nondiscretionary duty to distribute the wrongful death proceeds in the ratio prescribed by the Wrongful Death Act. *Leyba*, 120 N.M. at 776, 907 P.2d at 180. Therefore, any agreement to pursue a wrongful death lawsuit will, by definition, be for the benefit of the statutory beneficiaries. We made this rule explicit in *Leyba*:

> [T]here can be no other purpose of an attorney-client agreement to pursue claims for wrongful death than to benefit those persons specifically designated by the Act as statutory beneficiaries. We conclude therefore that . . . the very nature of a wrongful death action is such that we will imply in law a term in every agreement between an attorney and personal representative that the agreement is formed with the intent to benefit the statutory beneficiaries of the action.

*Id.* It is unnecessary to analyze in each wrongful death case whether the attorney for the personal representative actually intended to benefit the statutory beneficiary. Under the rule laid out in *Leyba*, the statutory beneficiary is always the intended beneficiary of the agreement between the personal representative and her attorney. *Id.* As a result, Barber,

acting as Sam's attorney in her capacity as personal representative, had "a duty to exercise reasonable care to ensure that the statutory beneficiaries actually receive[d] the proceeds of any wrongful death claim." *Id.* at 778, 907 P.2d at 182.

**{23}** However, according to Barber, Sam had taken the position that her ex-husband, Spencer, had abandoned Hermanda and their other children, and therefore Spencer was not entitled to share in any wrongful death proceeds. *See* NMSA 1978, § 45-2-114(C) (2004) (amended 2012) (precluding a parent from inheriting from a child through intestate succession unless he "has openly treated the child as his and has not refused to support the child"); *see also Perry v. Williams*, 2003-NMCA-084, ¶¶ 20-22, 133 N.M. 844, 70 P.3d 1283 (applying the policy of Section 45-2-114(C) to bar recovery under the Wrongful Death Act by a father who had abandoned his child).

**{24}** It is not clear from the record when Barber learned that Sam disputed Spencer's entitlement to his share of any wrongful death proceeds. However, upon learning that there was a dispute regarding Spencer's entitlement to a portion of the proceeds, Barber could not simply distribute such proceeds from the wrongful death lawsuit to either Spencer or Sam. *See* Rule 16-115(E) NMRA ("When in the course of representation a lawyer is in possession of property in which two or more persons . . . claim interests, the property shall be kept separate by the lawyer until the dispute is resolved."). As we have made clear in the commentary to Rule 16-115(E):

> Paragraph E also recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. A lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, but, when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute.

*Id.* cmt. 4.

**{25}** This procedure was followed by the attorneys in *Perry*, where the mother prosecuted a wrongful death lawsuit to its conclusion and subsequently sued the child's father, seeking a declaration that he was not entitled to share in the wrongful death proceeds because he had abandoned their child. *See* 2003-NMCA-084, ¶¶ 2-3 (describing procedural history). In this case, Barber learned that Sam intended to contest Spencer's right to share in the wrongful death proceeds before he concluded his representation of Sam in the case. This knowledge created a conflict of interest for Barber because Sam wanted to oppose the distribution mandated by statute. *See McTaggart*, 509 N.W.2d at 884 (finding a conflict of interest in

9

attorney's representation of decedent's mother both as personal representative and as claimant against other beneficiaries); *Home Ins. Co. v. Wynn*, 493 S.E.2d 622, 624, 626 (Ga. Ct. App. 1997) (upholding verdict against attorney for representing decedent's widow both as fiduciary and on her own behalf, where the two roles created conflicting incentives).

**{26}**  Even if Barber was not aware of this particular conflict at the outset of his representation of Sam, in *Leyba* we acknowledged the possibility that a conflict might develop as a case progresses.  120 N.M. at 777, 907 P.2d at 181.  We recognized that when the interests of the personal representative and the beneficiaries are adverse, or become adverse, there is an adversarial exception to the attorney's ordinary duty of care toward the beneficiaries.  *Id.* at 777-78, 907 P.2d at 181-82.

**{27}**  However, in *Leyba* we made it clear that just because the attorney has identified a conflict does not mean that he does not have a duty to the beneficiaries or that these duties are automatically discharged.  *Id.* at 778, 907 P.2d at 182.  We noted that if an attorney finds himself or herself in a conflicted situation and takes no action to resolve the conflict, "rather than applying the adversarial exception to deny the existence of a duty to the nonclient," a court should find that a duty exists and "a breach of that duty . . . arise[s] out of continuing representation of conflicting interests."  *Id.* at 777, 907 P.2d at 181.  "The fact that an attorney identifies a conflict, actual or potential, should not . . . in itself negate the duty owed to the statutory beneficiaries."  *Id.* at 778, 907 P.2d at 182.  Instead, when such a conflict becomes apparent, the attorney can resolve the conflict by giving "notice to the nonclient that the latter cannot rely on the attorney to act for his or her benefit."  *Id.* at 777, 907 P.2d at 181.

**{28}**  Insofar as the wrongful death litigation is concerned, Barber's client was Sam *as the estates' personal representative*, who had a duty to distribute wrongful death proceeds in accordance with the Wrongful Death Act.  As statutory beneficiaries, Sam and Spencer were identically situated—they both were intended beneficiaries of the agreement between Sam, as personal representative, and Barber.  When Sam, as statutory beneficiary, announced that she wanted all of the proceeds from the wrongful death lawsuit because she alleged that Spencer had abandoned Hermanda, this position conflicted with her fiduciary duty as personal representative.

**{29}**  The Georgia Court of Appeals addressed a similar situation in *Home Insurance Co.*, 493 S.E.2d at 624, in which it upheld a jury verdict against a widow who had brought and settled claims both on her own behalf and as a fiduciary for her husband's estate, of which she was one of several beneficiaries.  When she settled the lawsuit, she had an improper incentive to allocate the settlement to claims for which she was the only beneficiary.  *Id.* at 626.  The court wrote:

> An agent cannot place herself in a position in which her duty and interests conflict with those of her principal. . . . The trustee must avoid being placed in such a position, and if she cannot avoid it, she may resign, may fully

10

> inform the beneficiaries of the conflict, or may request the court to appoint a guardian ad litem to protect the unprotected interests. If she fails to do any of these things, she proceeds at her own peril.

*Id.* The court also upheld the verdict against the woman's lawyer. *Id.* at 624; *see also McTaggart*, 509 N.W.2d at 884 ("[D]ual representation [of one person as claimant and personal representative] is improper if representation of the claimant would adversely affect representation of the fiduciary."); *In re Birnbaum*, 460 N.Y.S.2d 706, 707 (Sur. Ct. 1983) ("[W]here the attorney represents his client in both capacities [as a beneficiary and a fiduciary], he may not act to advance the *personal* interests of a fiduciary in such a way as to harm . . . the estate.").

**{30}**   Spencer asserts that if Barber wished to continue representing Sam in her individual capacity, he was obligated to withdraw from his representation of Sam as the personal representative. Barber contends that he no longer owed Spencer a duty as an intended beneficiary once he told Spencer that he was Sam's attorney and not Spencer's. We do not agree that the only way Barber could avoid the conflict of interest was to withdraw from his representation of Sam as the personal representative, nor do we agree that Barber negated his duty to Spencer by choosing to protect Sam's interest as a statutory beneficiary over Spencer's interest by giving notice to Spencer that he was Sam's lawyer and not Spencer's.

**{31}**   Barber could have declined to represent Sam in her claim that Spencer was not entitled to his statutory share of the wrongful death proceeds, or he could have deferred the legal battle until after the wrongful death case was concluded, similar to the situation in *Perry*. However, Barber did not choose either of these approaches. When Barber approached Spencer with the settlement agreement, the wrongful death litigation had not been settled. In addition, the agreement listed Sam as a party to the agreement both in her individual capacity (as a statutory beneficiary) and as the personal representative (as fiduciary to the intended beneficiaries). Striking an agreement between Sam as the fiduciary and Spencer as the beneficiary was not prohibited provided that Barber, acting on behalf of Sam as the personal representative, complied with Restatement (Second) of Contracts Section 173 (1981), which provides:

> If a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary, unless
>
> (a) it is on fair terms, and
>
> (b) all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know.

*See also Moody v. Stribling*, 1999-NMCA-094, ¶ 33, 127 N.M. 630, 985 P.2d 1210 (citing

11

Section 173 for proposition that "contracts entered into between a fiduciary and beneficiary are suspect"). We also believe that Comment a to Restatement Section 173 informs the duty in this case. Comment a provides:

> The rule stated in this Section applies to any fiduciary, including a trustee, an agent, a guardian, or an executor or administrator. . . . When a fiduciary makes a contract with the person beneficially interested, it is not enough that he make a complete disclosure of the facts known to him. The person beneficially interested must be put on an equal footing, with full understanding of his legal rights and of all relevant facts that the fiduciary knows or should know. If that person is not of competent age and understanding, this may be difficult if not impossible to achieve. If it is impossible, the fiduciary is precluded from making a contract with him within the scope of the fiduciary relation.

Restatement (Second) of Contracts § 173 cmt. a.

**{32}** This is consistent with the New Mexico rule on dealing with an unrepresented person. Rule 16-403 NMRA states that an attorney should not give legal advice to an unrepresented person, but the commentary goes on to explain:

> Whether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur. This rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person. So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may inform the person of the terms on which the lawyer's client will enter into an agreement or settle a matter, prepare documents that require the person's signature and explain the lawyer's own view of the meaning of the document or the lawyer's view of the underlying legal obligations.

Rule 16-403 cmt. 2. Therefore, under Rule 16-403, an attorney may meet with a beneficiary, explain whom he represents, and negotiate a settlement, provided that the attorney and the personal representative first put the beneficiary on an "equal footing" as required by Restatement Section 173 comment a.

**{33}** It is not sufficient for the attorney to simply tell the intended beneficiary that he or she needs his or her own counsel. The attorney must provide any intended beneficiaries with disclosure that is sufficient for them to understand *why* they need independent representation. This Section 173 disclosure is analogous to the one that an attorney must provide to a client to obtain the client's informed consent to a conflicted representation. *See, e.g.*, Rules 16-107(B)(4); -108(A)(3), (B), (F)(1), & (G) NMRA (requiring informed consent of clients to potential conflicts). Whether the disclosure is to a client or an intended beneficiary, the

12

purpose of the disclosure is to allow the person to make an informed decision about whether he or she in fact needs independent representation.

**{34}** Comment 7 to Rule of Professional Conduct 16-100 NMRA states that for the purpose of obtaining informed consent, adequate communication will ordinarily include "disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives." When the attorney for the personal representative gives notice to a statutory beneficiary as required by *Leyba*, adequate disclosures will normally include, at a minimum: (1) the fact that the person is a beneficiary in a wrongful death lawsuit, as well as the identities of the parties to the lawsuit; (2) the amount of any settlement or verdict reached, or any settlement offers under consideration; (3) the percentage of the settlement or verdict to which the beneficiary is entitled under the statute; (4) the basic position of the adverse party, e.g., "she does not believe that you are entitled to any money because you abandoned your child"; and (5) the fact that the attorney now represents the adverse party against the beneficiary and is not looking out for the beneficiary's interests.

**{35}** In this case, there exist genuine issues of material fact about whether Barber satisfied his obligation to safeguard Spencer's possible share of the *Kalenik* settlement and whether Barber's disclosures to Spencer were adequate. By March 13, 2007, several of the *Kalenik* defendants had offered to settle the claims of both estates for a total of $900,000. March 13, 2007 was the date that Barber contacted Spencer for the first time. Barber contends that he mailed a letter to Spencer on May 4, 2006, presumably to notify Spencer about the pending wrongful death action. Because this letter is not in the record, we do not know what notice Barber intended to give Spencer. Nevertheless, Barber states that the letter was returned marked "insufficient address," making it clear that whatever notice Barber sent did not reach Spencer.

**{36}** In any event, on March 13, 2007, Barber went to Spencer's place of employment without first contacting or scheduling an appointment with Spencer and waited until Spencer arrived. Once Spencer arrived, Barber met with him in a public location, where Barber presented a five-page written "Settlement Agreement and Release" to Spencer. The agreement sought to resolve "any questions about distribution of the proceeds of the wrongful death claims." The agreement does not describe the issues that existed with respect to the distribution of the proceeds. In addition, the agreement sought Spencer's release of the *Kalenik* defendants and his release of Sam and her attorneys for all potential claims and causes of action, including wrongful death claims.

**{37}** Barber told Spencer that he was Sam's attorney and that he wished to settle any claims that Spencer had to Hermanda's wrongful death settlement. Spencer inquired about the amount of the settlement, which Barber said would be "'a large or very large amount,'" but Barber did not tell Spencer the amount of the offer. *Spencer*, 2011-NMCA-090, ¶ 5. Spencer signed the agreement that day for the payment of $20,000, plus Sam's release of

13

Spencer's outstanding child support payments. *Id.* ¶ 6.

**{38}**    That evening Barber sent an e-mail message to the defense attorneys in the *Kalenik* litigation, accepting their offers to settle the case for $900,000. *Id.* ¶ 9. Each estate was paid $450,000 as wrongful death damages. In addition, Hermanda's estate received a present value[1] of $143,776.72 from Lydia's estate, representing the wrongful death proceeds that would have been due to Hermanda as Lydia's mother. As such, Hermanda's estate received a total of $593,776.72. Sam paid $162,446.55 from that amount in fees, costs, and taxes, owed Spencer $20,000, and kept $411,330.17.

**{39}**    Barber contends that he satisfied his obligations under *Leyba* because he claims that he told Spencer he represented Sam and not Spencer, and Spencer was entitled to meet with a lawyer and have a judge decide the portion of the settlement to which Spencer was entitled. Barber also stated that he told Spencer that "he would normally be entitled to a share of the wrongful death recovery. . . . [H]owever, that it was Ellen Sam's position that he was not entitled to any recovery under either estate because he had abandoned the children." Spencer denies that Barber told him about Sam's allegations that Spencer had abandoned Hermanda. However, the parties agree that Barber did not tell Spencer the size of the anticipated settlement. There is no indication that Barber said that he represented Sam against Spencer, or that Spencer was entitled to either 50% of Hermanda's wrongful death estate under the relevant statute or to 50% of the proceeds received by Hermanda's estate for Lydia's wrongful death. The disputed and missing statements go directly to the adequacy of Barber's notice to Spencer, which is at the heart of this case. Therefore, on this record, we cannot conclude that Barber was entitled to judgment as a matter of law.

### C.    A Conflict May Arise When the Personal Representative May Be Liable for the Death of the Decedent

**{40}**    Spencer also contends that Barber breached his duty to Spencer when Barber continued to represent Sam after learning that she may have contributed to the wrongful deaths of Hermanda and Lydia. Barber does not contest the allegation that the collision occurred when Sam stopped the car at night in a traffic lane on I-40 with the car lights off. However, Barber contends that "[t]he issue of Sam's alleged negligence, in regard to the issues in *Kalenik*, was for determination in that suit, through comparative fault defenses to be presented by defendants, who nevertheless chose to pay full value in settling the claims."

**{41}**    Whether the settlement reached with the *Kalenik* defendants represented the full value of the defendants' exposure is not at issue in this case, but we conclude that Sam's potential liability created a potential conflict of interest in this case. Any liability of the *Kalenik* defendants would be reduced by Sam's percentage of liability, if any. In addition, to the extent that Sam contributed to the cause of the deaths of Hermanda and Lydia, she too

---

[1]Some of the proceeds were structured in an annuity for future payments to Sam.

14

would be liable for fair and just damages to the remaining statutory beneficiaries. A conflict of interest may exist if "representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a *third person*." Rule 16-107(A)(2) (emphasis added); *see also* Pa. Ethics Op. 00-75, Pa. Bar Ass'n Comm. on Legal Ethics & Prof'l Responsibility, 2000 WL 33678415 at *3 (Nov. 1, 2000) (applying equivalent Pennsylvania rule to attorney who represented client both as individual and as personal representative of an estate, where attorney's representation of personal representative might have created responsibilities to third parties).

**{42}**     The relevant third party in a wrongful death lawsuit is the statutory beneficiary, whom we have defined as an intended beneficiary of the relationship between the attorney and the personal representative. If there are statutory beneficiaries other than the personal representative, and there is a good-faith basis to believe that the personal representative contributed to the death of the decedent, this constitutes a conflict of interest that may give rise to a malpractice cause of action. The North Carolina case of *Jenkins*, upon which we relied in *Leyba*, provides a good example of this kind of conflict. In that case, an attorney represented a client who was the executor of two separate estates simultaneously. 316 S.E.2d at 358. One estate had a viable cause of action against the other for wrongful death, and the executor stood to inherit from the tortious estate, but not from the injured estate. *Id.* at 357-58. The executor chose not to sue the tortfeasor's estate, and an heir of the injured estate sued the executor and her attorney for breach of their duties. *Id.* at 356. The court found that the complaint stated a malpractice cause of action against the attorney. *Id.* at 358.

**{43}**     In this case, there are genuine issues of material fact regarding whether Barber had a conflict of interest in his representation of Sam and, if so, whether he handled the conflict of interest with due care and skill without harming the statutory beneficiaries. Sam was driving the car immediately prior to the accident that caused Hermanda's and Lydia's deaths. Barber admits, on information and belief, that there is evidence that Sam had been drinking alcohol before the collision and that she may have stopped the car in an unsafe location and manner. Barber, however, denies that Sam's conduct proximately caused the death of Hermanda and Lydia. Therefore, based on the record before us, summary judgment in favor of Barber was inappropriate.

### D.     If a Tort Does Not Depend on the Existence of a Fiduciary Duty, the *Leyba* Analysis Is Inapplicable

**{44}**     The parties agree that Spencer's complaint raises non-malpractice causes of action against Barber, including fraud, collusion, and misrepresentation. The Court of Appeals affirmed the district court's grant of summary judgment for Barber on these claims, appearing to treat them not as independent claims, but as an alternative basis for the malpractice claim. *See Spencer*, 2011-NMCA-090, ¶¶ 32-34 (addressing tort claims). The Court of Appeals appeared to find that the adversarial relationship between Barber and Spencer barred the claim. *Id.* ¶¶ 30-31. The Court also emphasized that *Leyba* does not distinguish "between a contract-based claim of malpractice and a tort-based claim of

malpractice." *Spencer*, 2011-NMCA-090, ¶ 32.

**{45}** This statement is accurate, but the Court of Appeals' analysis misreads our opinion in *Leyba*. In general, a non-client cannot maintain an action for malpractice against an attorney. *Garcia*, 106 N.M. at 761, 750 P.2d at 122. There is an exception when the non-client is the intended beneficiary of the attorney's work. *Leyba*, 120 N.M. at 771-72, 907 P.2d at 175-76. We determined that an intent to benefit non-client beneficiaries can be inferred in wrongful death cases, and therefore beneficiaries in these cases can sue the personal representative's attorney for malpractice. *Id.* at 776, 771, 907 P.2d at 180, 175. We left an exception for cases in which the parties were in an adversarial position, where no such intent could be inferred. *Id.* at 778, 907 P.2d at 182.

**{46}** However, none of this analysis, including the adversarial exception, is necessary if the plaintiff brings a cause of action in which he or she can prevail, even if he or she was *not* the intended beneficiary of the attorney's work. For example, under New Mexico law, a fiduciary relationship is not an element of fraudulent misrepresentation. *See Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281 (listing elements of fraud as including "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation"). We see no reason that this situation should be any different if the defendant is an attorney.

**{47}** Because the plaintiff does not have to establish a relationship of trust to bring the claim, the adversarial exception is irrelevant—the plaintiff can sue whether or not the lawyer's client is his or her adversary. We acknowledged the difference between malpractice and other tort actions in *Leyba*, writing that even if a non-client's malpractice claims were barred, "a third party has traditional tort claims against an attorney for misrepresentation, fraud, and collusion, none of which depend upon a duty arising out of contract." 120 N.M. at 773 n.3, 907 P.2d at 177 n.3. These are precisely the claims that Spencer has put forth in this case.

**{48}** Spencer's independent tort claims were not fully briefed, and we express no opinion on them except that they are in no way subject to *Leyba*'s adversarial exception. However, we note that the Court of Appeals, in considering the issue of the enforceability of Spencer and Barber's agreement, found genuine issues of material fact concerning possible misrepresentations by Barber. *Spencer*, 2011-NMCA-090, ¶ 38. These issues would presumably also be at play in Spencer's tort claims.

## CONCLUSION

**{49}** Based on our review of the record in this case, we conclude that there exist genuine issues of material fact regarding whether Barber is liable for malpractice to Spencer. We further conclude that Spencer's independent tort claims are not barred by *Leyba*. Therefore,

16

we reverse the opinion of the Court of Appeals and remand to the district court for proceedings consistent with this opinion.

**{50}   IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *Spencer v. Barber*, No. 33,133**

**ATTORNEYS**
Conflict of Interest
Professional Responsibility

**CIVIL PROCEDURE**
Settlement Agreement
Summary Judgment

**CONTRACTS**
Fraud, Duress, or Mistake
Third Party Beneficiary

**DOMESTIC RELATIONS**
Abandonment

**TORTS**
Misrepresentation
Release
Wrongful Death

**WILLS, TRUSTS, AND PROBATE**
Personal Representative