The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: **March 11, 2024**

**No. A-1-CA-40817**

**IN THE MATTER OF THE ESTATE OF GRAHAM R. GOLDEN, Deceased.**

**ROBERT CAMPBELL, O. PRAEM.,**
**Probate Code Personal Representative,**

Petitioner-Appellant,

v.

**NORBERTINE COMMUNITY OF NEW MEXICO,**

Interested Party-Appellant,

v.

**DANIEL GOLDEN and DEBORAH GOLDEN,**
**father and mother of the deceased,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Court Judge**

Robert D. Gorman, P.A.
Robert D. Gorman
Albuquerque, NM

for Appellants

Mescall Law Firm, P.C.
Thomas J. Mescall, II
Phillip Patrick Baca
Albuquerque, NM

for Appellees

**OPINION**

**WRAY, Judge.**

{1}      Respondents Daniel and Deborah Golden (Parents), parents of Graham R. Golden (Father Golden), deceased, challenged the appointment of petitioner, Very Reverend Robert Campbell, O. Praem. (the Reverend), as the personal representative (PR) of the wrongful death estate of Father Golden, pursuant to the Wrongful Death Act (WDA), NMSA 1978, §§ 41-2-1 to -4 (1891, as amended through 2001). The district court eventually determined that Parents are the statutory beneficiaries under the WDA, and Parents could designate the PR. As a result, the district court removed the Reverend as PR and entered three orders (the Orders) that reflected these rulings. We hold that the district court entered the Orders based on a misapprehension of Section 41-2-3 and reverse.

**BACKGROUND**

{2}      Father Golden was a thirty-five year old priest who died in an automobile accident. Following Father Golden's death, the Reverend and the Norbertine Community of New Mexico (collectively, the Community), a religious community of which both Father Golden and the Reverend were members, filed an application to appoint the Reverend as PR under both the WDA and the New Mexico Uniform Probate Code (Probate Code), NMSA 1978, §§ 45-1-101 to 45-7-612 (1975, as amended through 2022). The district court granted the application, and the Reverend

accepted both appointments. After the appointment, Parents filed a motion to set aside the order appointing the Reverend as the WDA PR[1] and claimed an interest in any potential wrongful death proceeds. During the hearing on that motion, the district court determined that because the parties could not agree on who had an interest in the wrongful death proceeds, it was appropriate to remove the Reverend as WDA PR and appoint an independent third party. The district court tentatively appointed Parents' selected WDA PR based on the parties' conditional agreement, but ultimately, the Community objected to that individual.

{3} The Community filed a motion to reinstate the Reverend as the WDA PR, and Parents filed a motion to designate themselves as the beneficiaries under the WDA. The district court held another hearing and determined that in order to decide who had "standing" to nominate a WDA PR, the statutory beneficiaries must be identified. As a result, the district court (1) found that Parents were the "statutory beneficiaries in this matter for purposes of being [WDA] PR"; (2) denied the Community's motion to reinstate the Reverend as the WDA PR; and (3) granted Parents' motion to designate Parents as the statutory beneficiaries under the WDA

---

[1]A Probate Code PR (PC PR) appointment and a PR appointment under the WDA (WDA PR) are considered separately and each encompasses different responsibilities. *See Oakey v. Tyson*, 2017-NMCA-078, ¶¶ 23, 30, 404 P.3d 810 (explaining that under Rule 1-017(B) NMRA, separate appointment under the WDA is required and that a PC PR and a WDA PR have different responsibilities). The Reverend's appointment as the PC PR is not challenged on appeal.

and finalized the appointment of Parents' chosen WDA PR. The district court entered the Orders to that effect, and this appeal followed.

**DISCUSSION**

{4}     The scope of this appeal is fairly narrow—whether Parents are "statutory beneficiaries" under the WDA. Before detailing the parties' arguments further, we pause to define what we mean by "statutory beneficiaries" under the WDA. Section 41-2-3 includes both specifically identified individuals and a priority for their recovery, *see* § 41-2-3(A)-(E), as well as a broad category of potential beneficiaries who could recover "in the manner authorized by law," *see* § 41-2-3(F). When we refer to "statutory beneficiaries" in this opinion, we mean those individuals who are identified in Section 41-2-3(A) through (E) and further described as "kindred" in Section 41-2-3(F) of the WDA.

{5}     Turning to the issues on appeal, we observe that though the Orders are not explicit, at the hearings the district court based its rulings on the finding that Parents are statutory beneficiaries under Section 41-2-3. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs*, 2009-NMCA-045, ¶ 8, 146 N.M. 106, 206 P.3d 1011 ("We do not consider the oral ruling as a final order, but simply as instructive in determining the court's intent where an ambiguity exists in the court's decision." (internal quotation marks and citation omitted)). Specifically, after concluding that Parents are statutory beneficiaries "for the purposes of determining standing to

request appointment of a personal representative under the [WDA]," the district court on that basis appointed Parents' selected WDA PR and denied the Community's motion to reinstate the Reverend as WDA PR. The parties argued and the district court accepted that only the statutory beneficiaries have standing to nominate a WDA PR, but we need not consider this premise because we conclude that Parents are not statutory beneficiaries under the WDA.[2]

{6}    "To the extent we must construe the applicable statutes, our review is de novo." *Jones v. City of Albuquerque Police Dep't*, 2020-NMSC-013, ¶ 17, 470 P.3d 252 (internal quotation marks and citation omitted). Our goal is to "give effect to the intent of the Legislature" by examining the language used and by applying its "ordinary and plain meaning." *Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545 (internal quotation marks and citation omitted). "We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. We therefore begin with the language of the statute.

---

[2]The Community also broadly claims its own WDA statutory beneficiary status. Because the district court did not rule directly on the Community's status as statutory beneficiary and the Community makes no explicit argument, we do not consider the further identification of statutory beneficiaries under the WDA.

{7}     Section 41-2-1 generally establishes a cause of action "[w]henever the death of a person shall be caused by the wrongful act, neglect or default of another." Section 41-2-3 explains that

> [e]very action mentioned in Section 41-2-1 . . . shall be brought by and in the name of the personal representative of the deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they deem fair and just, taking into consideration the pecuniary injury resulting from the death to the surviving party entitled to the judgment, or any interest in the judgment, recovered in such action and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. *The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased; provided the decedent has left a spouse, child, father, mother, brother, sister or child or children of the deceased child*, as defined in the New Mexico Probate Code . . . , but shall be distributed as follows:
>
>      A.     if there is a surviving spouse and no child, then to the spouse;
>
>      B.     if there is a surviving spouse and a child or grandchild, then one-half to the surviving spouse and the remaining one-half to the children and grandchildren, the grandchildren taking by right of representation;
>
>      C.     if there is no husband or wife, but a child or grandchild, then to such child and grandchild by right of representation;
>
>      D.     if the deceased is a minor, childless and unmarried, then to the father and mother who shall have an equal interest in the judgment, or if either of them is dead, then to the survivor;
>
>      E.     *if there is no father, mother, husband, wife, child or grandchild*, then to a surviving brother or sister if there are any; and
>
>      F.     *if there is no kindred as named in Subsections A through E of this section*, then the proceeds of the judgment shall be disposed of

5

in the manner authorized by law for the disposition of the personal property of deceased persons.

(Emphasis added.) Despite the language in Section 41-2-3(D) limiting WDA distribution to the parents of unmarried and childless minors, Parents contend that Section 41-2-3 permits the parents of adult children to receive distribution based on the language we have italicized in Section 41-2-3(E) and (F); the language that we have italicized in the introduction to the statute (the prefatory language); *Solon v. WEK Drilling Co.*, 1992-NMSC-023, 113 N.M. 566, 829 P.2d 645; and *Varney v. Taylor*, 1968-NMSC-189, 79 N.M. 652, 448 P.2d 164. We begin with Parents' construction of Section 41-2-3.

{8} Parents acknowledge that Section 41-2-3(D) limits recovery of wrongful death proceeds to only the parents of unmarried and childless minors, but Parents argue that Section 41-2-3(E) authorizes parents of all children to receive wrongful death proceeds because Section 41-2-3(E) mentions "father, mother" but does not reference minors. Parents also point to Section 41-2-3(F), which only permits recovery as "authorized by law" if "there is no kindred as named" in Section 41-2-3(A) through (E). Parents reason that the reference in Section 41-2-3(E) to "father, mother" is enough to establish that the parents of adult children are "kindred as named in Subsections A through E." According to Parents, those "kindred" must be permitted to receive disbursement under the WPA as statutory beneficiaries, otherwise the existence of parents of adult children would block recovery by anyone

6

because Section 41-2-3(F) only permits distribution "in the manner authorized by law" if "there is no kindred." We cannot agree. The language of Section 41-2-3(E) does not create any rights for the parents of adult children. To accept Parents' construction, we would have to determine that Section 41-2-3(E) both implicitly creates a right for the parents of adult children to recover, and then explicitly prioritizes that implied right over the recovery of any siblings. As we explain, Section 41-2-3(D) describes the parents who are entitled to be statutory beneficiaries, and Section 41-2-3(E) and (F) incorporate that definition of father and mother.

{9}     Each provision of Section 41-2-3 builds upon the next and refers to the preceding provision. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622 ("[W]e read the provisions at issue in the context of the statute as a whole." (internal quotation marks and citation omitted)). Section 41-2-3(A) sets up a scenario: if a surviving spouse but no child, spouse recovers. Section 41-2-3(B) changes that scenario a bit: if both a surviving spouse and a child or grandchild, both recover. Section 41-2-3(C) adjusts that arrangement to: if no spouse but a child or grandchild, child and grandchild recover. Section 41-2-3(D) introduces a new scenario based on the status of the deceased, but continues to build on the previous provisions: if the deceased is childless and unmarried—referring to Section 41-2-3(A) through (C)— and a *minor*, the parents may recover. Following the progression of the statute thus

7

far, Section 41-2-3(E) lists the individuals referenced in all previous subsections: if no father, mother, husband, wife, child, or grandchild, siblings may recover. In the context of the statute as a whole, Section 41-2-3(E) refers to the parents identified in Section 41-2-3(D)—the parents of childless and unmarried minors. Necessarily then, the reference in Section 41-2-3(F) to "kindred as named in Subsections (A) through (E)" also refers to the parents as defined in Section 41-2-3(D)—the parents of a deceased child who was a minor, "childless and unmarried." To view Section 41-2-3 otherwise ignores the construction of the statute as a whole and renders Section 41-2-3(D) meaningless. Section 41-2-3(D) permits the parents of a childless and unmarried *minor* to receive distribution of WDA recovery. If Section 41-2-3(E) and (F) work together to permit any parent to receive a WDA distribution, regardless of whether the deceased child was a minor, Section 41-2-3(D) has no purpose. *See Farish*, 2021-NMSC-030, ¶ 11 (observing that appellate courts  must interpret a statute so as to avoid rendering the Legislature's language superfluous." (internal quotation marks and citation omitted)).

{10}   Parents also point to the prefatory language of Section 41-2-3: "The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased; provided the decedent has left a spouse, child, father, mother, brother, sister or child or children of the deceased child, as defined in the . . . Probate Code." It would be unreasonable, Parents contend, to permit the proceeds of any judgment

8

to remain debt-free because Parents are alive but not permit Parents themselves to recover the proceeds. *See Farish*, 2021-NMSC-030, ¶ 11 ("If the language is doubtful or ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, then [an appellate court] will construe the statute in accordance with its obvious spirit or reason." (alteration, internal quotation marks, and citation omitted)). Again, however, we must read this provision in the context of the whole. We see no legislative intent in the prefatory language to generally include all parents in the distribution of wrongful death proceeds but instead intent to ensure that if proceeds are distributed according to the WDA, those proceeds are not available to satisfy the debts of the decedent. We stress that in this opinion, we consider the prefatory language only in relation to Parents' argument that the language suggests the Legislature intended for the parents of adult children to recover under the WDA. The present case raises no question of the payment of debts, and we make no determination as to any such liability.

{11}    We last address Parents' argument that our Supreme Court's decisions in *Solon* and *Varney* mandate that the parents of adult children are statutory beneficiaries under Section 41-2-3(A) through (E). In *Solon*, the Court stated,

> Under Section 41-2-3, every action under our wrongful death act is to be brought by the personal representative of the decedent, and the proceeds are to be distributed, where there is no surviving husband or wife but there is a surviving child or children, to such child or children. The parents of the decedent cannot share in the proceeds unless the decedent is survived by neither a spouse, a child, nor a grandchild.

9

1992-NMSC-023, ¶ 7. From this, Parents extrapolate that our Supreme Court has concluded that the parents of adult decedents fit into Section 41-2-3—and that because Father Golden was "survived by neither a spouse, a child, nor a grandchild," Parents are statutory beneficiaries. The Court, however, was not deciding whether the parents of the decedent were statutory beneficiaries. The *Solon* parents disclaimed any argument that they sought recovery under the WDA, *id.* ¶ 6, the decedent had a daughter who did have a claim, *id.* ¶ 3, and the Court's explanation of the WDA was to explain why the parents must have been seeking permissive intervention, rather than intervention as a matter of right, to pursue a common law claim. *Id.* ¶¶ 6-8. So too in *Varney*, the issue on appeal was the amount of damages that parents could recover for an apparently adult son and not whether the parents were statutory beneficiaries based on their status as parents. 1968-NMSC-189, ¶¶ 8-9. We agree with the Community that these cases do not mandate Parents' desired result and for the same reason, we are unpersuaded by Parents' argument that because the Legislature amended Section 41-2-3 after *Solon* but did not change a parent's ability to recover, the Legislature approved *Solon*'s construction of the statute. Neither *Solon* nor *Varney* held that the parents of adult children can recover under the WDA, and the conclusions that Parents draw from both cases were not necessary to decide the questions before this Court. As Parents note, we cannot summarily disregard the language used by our Supreme Court, even where that

10

language was not necessary to the holding. *See State v. Johnson*, 2001-NMSC-001, ¶ 16, 130 N.M. 6, 15 P.3d 1233. We have, however, carefully considered *Solon* and *Varney*, and generally, "cases are not authority for propositions not considered" by the Court. *See Grygorwicz v. Trujillo*, 2006-NMCA-089, ¶ 9, 140 N.M. 129, 140 P.3d 550 (alteration, internal quotation marks, and citation omitted).

{12}     Our view that Section 41-2-3(D) defines the parents who are prioritized statutory beneficiaries under the WDA does not preclude parents from any recovery in a wrongful death action for their adult children. Apart from the reference to "kindred," Section 41-2-3(F) affords an opportunity for parents of adult children to recover "in the manner authorized by law for the disposition of the personal property of deceased persons," which would include testate and intestate succession under the Probate Code. As our Supreme Court noted in *Spencer v. Barber* that

> [b]ecause [decedent] died [intestate] as an unmarried adult with no surviving children, her parents would ordinarily share equally in any recovery for her wrongful death. Section 41-2-3(F) (providing that if specific subsections do not apply, wrongful death proceeds "shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons").

2013-NMSC-010, ¶ 21, 299 P.3d 388. When parents are permitted to recover as statutory beneficiaries under the WDA, however, that recovery has been tied to the relationship between a parent and a minor child. *See Perry v. Williams*, 2003-NMCA-084, ¶ 20, 133 N.M. 844, 70 P.3d 1283 (observing that "[i]n 1939, the [L]egislature amended the [WDA], adding the language that is at the heart of this

11

case, which expressly provides that the surviving father and mother of a deceased minor child can be the beneficiaries of an action for the child's wrongful death" and that our wrongful death case law supports the "common law principle that the rights of parents and children are interlocked" (internal quotation marks omitted)). In *Perry,* this Court considered the right of recovery for a parent who abandoned the deceased child. *See id.* ¶¶ 1, 5. We noted that in the common law, although parents were "entitled to the services and earnings of . . . minor children," this entitlement "is not an absolute right of property, but is in the nature of a trust reposed in them, and is subject to their correlative duty to care for and protect the child; and the law secures their right only so long as they shall discharge their obligation." *Id.* ¶¶ 18-19 (emphasis, internal quotation marks, and citation omitted). In the present case, as in *Perry*, we will not "lightly assume that the [L]egislature intended to alter this common law principle when it enacted the [WDA]." *See id.* ¶ 20. We therefore conclude that the Legislature did not intend for parents to automatically receive WDA benefits if a child dies after reaching majority, because the parent's right to recovery correlates to the duty to care for and protect the child. *See id.* While we rely on the plain language of statutes with caution, *see id.* ¶ 15, in the present case, our reading of Section 41-2-3 satisfies both a common sense reading of the statute's language and the purpose for including the parents of minors as statutory beneficiaries under the WDA.

**CONCLUSION**

{13}    Reading the statute as a whole, Section 41-2-3(A) through (E) does not provide for Parents, as the parents of an adult child, to recover as statutory beneficiaries. As a result, Parents also do not have priority as "kindred" in Section 41-2-3(F). Because the Orders on appeal were decided on the basis that Parents are statutory beneficiaries, we reverse those Orders and remand for proceedings consistent with this opinion.

{14}    **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**ZACHARY A. IVES, Judge**

13